DAVID K. PALMER, Plaintiff in Error, v. STATE OF
TENNESSEE, Defendant in Error.
—475 S.W.2d 189.

October 18, 1971.

Certiorari Denied by Supreme Court December 20, 1971.

630

Burkett C. McInturff, Kingsport, for plaintiff in error.

David M. Pack, Attorney General, Thomas E. Fox, Deputy Attorney General, Nashville, Carl K. Kirkpatrick, District Attorney General, Blountville, for defendant in error.

MITCHELL, J. David K. Palmer was on February 28, 1968, indicted by the Grand Jury of Sullivan County, Tennessee, on a charge of assault with intent to commit murder in the first degree on the 25th day of November, 1967, upon James Erwin by shooting him with a pistol, in case no. 4320K.

On March 7, 1968, a capias was issued for the arrest of the defendant David K. Palmer.

On July 8, 1968, the minutes show that the defendant David K. Palmer was being held in the Federal Court in Virginia. The case was retired from the docket until the defendant is returned for trial.

In 4320K the defendant executed an appearance bond on April 13, 1970, for his personal appearance in the Criminal Court of Sullivan County on the 24th day of April, 1970, to answer the offense of felonious assault. April 24, 1970, the case was continued until next term. The minutes of September 22, 1970, showed this case 4320K was continued on motion of the state, that the alleged victim was out of the State, to which the defendant excepted.

On November 20, 1970, the defendant filed a motion to dismiss. The State asked for time to produce evidence as to the motion and the court allowed until December 4, 1970, to produce evidence in the matter. The defendant excepted.

On December 2, 1970, the Grand Jury returned a presentment in no 5609BL charging David K. Palmer did on November 25, 1967 unlawfully, feloniously, wilfully, deliberately, maliciously and premeditatedly and of his malice aforethought, commit an assault and battery upon James Erwin with intent to kill and murder him in the first degree. On December 7, 1970 the defendant in this case no. 5609BL made a motion to dismiss and quash the presentment, that the offense was alleged to have been committed on 25th of November, 1967 and the presentment was returned December 2, 1970 and he was denied a fair speedy public trial as provided by the constitution.

The minutes show that on December 7, 1970 in no. 4320K the indictment was dismissed because the Grand Jury had returned a new indictment No. 5609BL on which the State elected to go to trial. The defendant David K. Palmer was then on December 7, 1970 tried in no. 5609BL which resulted in a conviction of assault and battery. The jury fixed the punishment at six months in the Sullivan County jail and a fine of eight hundred ($800.00) dollars. Upon which the trial judge Honorable John K. Byers pronounced judgment, and allowed thirty days to file a motion for a new trial.

The motion for a new trial was heard and overruled, and the defendant appealed and assigned the following errors:

1. There is no evidence to support the verdict in this case.

2. The verdict of the jury is contrary to both the law and the evidence.

3. The overwhelming weight of the evidence preponderates in favor of the innocence of the Defendant and against his guilt.

4. The Court erred in overruling his motion to dismiss this case on the ground that his constitutional rights both State and Federal to a fair and speedy and public trial had been violated; this ground pertains to the first motion filed in this case.

5. The Court erred in overruling his motion to dismiss the case and/or presentment on the ground that his constitutional rights have been violated to a fair, speedy and public trial in that the presentment upon which he was tried was returned by the grand jury in December 1970 and the offense set forth in the presentment allegedly occurred in November 1967, and the failure of the State of Tennessee to properly indict him within a reasonable time, after the offense allegedly occurred, and bring him to trial on the indictment constituted a violation of his constitutional rights as secured to him by the State and Federal Constitution.

The victim James Erwin a sergeant in the Air Force was riding in the car with his friend and neighbor Ronald Rasnick the night of November 25, 1967. That they had been trading guns and he had a .22 caliber pistol locked in the glove compartment of Rasnick's car and had been doing some target practice with his rifle.

That they drove around McDonald's, then down Ford Henry Drive toward the Circle, down Memorial Boulevard, then through Peggy Ann Parking Lot on to Waverly Road and down Lamont Street toward Borden Mills. That as they got underneath the street light there was a car right behind them. He heard a big, loud pop and turned and saw a flash. He heard another pop and told Rasnick they were shooting at them. Erwin slumped down in the seat and was hit in the shoulder by a bullet and was knocked into the dashboard. He told Ron (Rasnick) he had been hit. The car behind them was chasing them and Rasnick and Erwin were trying to get away from them and in doing so Rasnick ran a stop sign and hit a car broadside. Erwin was laying in the floorboard, without his glasses. He crawled out of the car but couldn't find Rasnick.

Two girls in the other car were hurt. They and Erwin were hospitalized.

At that time Erwin was a student at East Tennessee State University.

The bullet broke his collar bone, lodged in the upper arm and splinters of bone were taken out.

Erwin had never seen the defendant David Kent Palmer before and did not know him.

The Chevrolet automobile in which Erwin and Rasnick were riding had three little round holes in the center of the trunk lid and the seat where he was sitting at the time he was shot, had a torn place like a bullet mark.

Rasnick was, driving and Erwin was sitting on the passenger side of the seat. Rasnick had the key to the the glove compartment where his pistol was locked. As a result of the wreck the dashboard was bent double and the glove compartment thrown open and the contents thrown out.

Erwin knew of differences, difficulties and fights between Carson Rice and Ronald Rasnick. Carson Rice was driving the vehicle following and chasing them. That Ronald Rasnick did not point a pistol out of his car toward Carson Rice.

Erwin said Rasnick and Rice were not gunning for each other. That the whole "ruckus" is about Carson Rice and Ronald Rasnick.

According to Carson Rice he was 25 years of age and that he works for 11-W Sunoco. That on November 25, 1967 he was in his car and that the defendant David Palmer, Stella Rhea and Mike Edwards were with him. That they went by Palmer's home on Park Street where Palmer went inside and stayed a few minutes and when he came out he had an automatic pistol. That they went to Shoney's. That they saw Ronald Rasnick and he wanted to talk to Rasnick about an argument that they'd had. That they saw Rasnick's car going down the Johnson City Highway. That they were just aross the street from McDonald's and that they followed Rasnick. That

he and Palmer were drinking. That as they followed Rasnick's car it went in behind the Peggy Ann Restaurant. That they continued to follow him at 40 or 45 miles per hour. When Rasnick's car stopped at the stop sign at Lamont he made a left turn and they followed him and that David Kent Palmer said, "I'll shoot the tires and stop him." We told him, "No, he might hit somebody." That the defendant Palmer fired at Rasnick's car trying to shoot the tires. The defendant was on the passenger side in the front seat. He fired 5 or 6 times and the Rasnick car just kept going. That they were still following him. That Rasnick ran a stop sign and hit another car and that he and the defendant went straight ahead. That they then went to Mike Edwards' father's car lot where he worked. Carson Rice further testified that two or three days before the trial the defendant came down and asked him if he was coming to the trial. That on the night of the shooting besides the defendant Palmer and Stella Rhea there were two other boys in the car which they had picked up in town, that he did not know who they were and he had not seen them since.

On cross-examination Carson Rice testified that the defendant asked him to take him out to his house where he got out of the car. Carson said he owed Rasnick some money and wanted to get it straight with him. That he did kick Rasnick's teeth out on a prior occasion. That Rasnick got after him with a gun after that happened and tried to run over him with a car.

According to Ronald L. Rasnick he was a second lieutenant in the Transportation Corps stationed at Ft. Eustis, Virginia. That he attended Dobbins-Bennett

High School and graduated from East Tennessee State University. That on November 25, 1967 he was living at Kingsport with his mother and step-father. That on that evening he and James Erwin were riding around looking for his brother as they planned to go deer hunting the next day. That they had bought a 615 foreign made rifle and took it out for target practice to test it out. That he had borrowed a pistol and at the time it was locked up in the glove compartment of his car. That he did not shoot the pistol that afternoon. That they were driving on Center Street and the traffic was heavy and he did not know they were being followed until after he turned off behind the Peggy Ann and made a left hand turn from Waverly Road onto Lamont Street where he stopped at the stop sign, and continued on down to the intersection with Pineola and about that time he heard some sort of a bang like backfiring of an automobile. "Then Erwin turned and said 'somebody is shooting at us.' Then we took off and about 50 to 75 feet further on Erwin slumped down in the seat and said he had been hit and we kept going." That he intended to take Erwin to his home. That they were trying to get away from the car that was shooting at them and he had an accident. That holes were shot in the back of his car. Rasnick testified that prior to that time Carson Rice had kicked him in the face and damaged his teeth but that he did not go looking for Rice with a gun and did not attempt to shoot Carson Rice on November 25, 1967, and that he did not brandish a gun at him, that he did not have that gun out of the glove compartment. That the only time he had it out was when they were taking target practice.

Mike Edwards testified that Carson Rice picked him up at Martinque and they drank some beer. The defendant Palmer and the girl, Stella Rhea were with him. That they rode around downtown. That defendant Palmer was sitting on the passenger side on the right and Carson Rice was driving. That they met the Rasnick boy. That Carson had had trouble with him and they starting chasing the Rasnick car which turned left behind Kroger's and behind the Peggy Ann. They chased them and Palmer said, "I'm going to shoot the tires out" and he started shooting at the Rasnick car. That he, Palmer, Rice and Stella Rhea were drinking and had drunk at least a six pack of beer. That he didn't know how many times the defendant shot but he estimated that he emptied the gun. That the Rasnick car they were following had a wreck. That he did not at any time see anybody brandish a gun in the car. "That we were following them and nobody was shooting at us." That defendant Palmer came to his house about 3 or 4 weeks before the trial and wanted him to try to avoid summons and not come to court. He refused and told him he had a wife and children and too much at stake to lie and that he was going to tell the truth. That neither he nor Carson Rice shot anybody that night, that David Kent Palmer shot at the Rasnick car.

The defendant did not testify nor offer any proof.

The first three assignments of error say there is no evidence to support the verdict, and that it is contrary to the law and the evidence and that it preponderates against the verdict and in favor of the innocence of the defendant.

These assignments must be tested by the rule that a guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State. Such verdict removes the presumption of the innocence of the accused which stands as a witness for him until he is convicted, and raises a presumption of his guilt upon appeal, and he has the burden upon appeal of showing that the evidence preponderates against the verdict and in favor of his innocence. Holt v. State, 210 Tenn. 188, 357 S.W.2d 57; Gann v. State, 214 Tenn. 711, 383 S.W.2d 32; McBee v. State, 213 Tenn. 15, 372 S.W.2d 173; Gulley v. State, 219 Tenn. 114, 407 S.W.2d 186; Jamison v. State, 220 Tenn. 280, 416 S.W.2d 768; Webster v. State, Tenn.Crim.App., 425 S.W.2d 799; Brown v. State, Tenn.Crim.App., 441 S.W.2d 485.

The rule is that the credibility of the witnesses and conflicts in the testimony are all settled by the verdict of the jury. Hargrove v. State, 199 Tenn. 25, 28, 281 S.W.2d 692, 694; Morrison v. State, 217 Tenn. 374, 397 S.W.2d 826, 400 S.W.2d 237.

We find the evidence does not preponderate against the verdict of the jury and in favor of the innocence of the defendant.

The defendant next complains that state witnesses Edwards and Rice were accomplices and that there is no corroboration for their testimony.

We are unable to find any merit in this complaint because the rule requiring corroboration for accomplices

does not obtain in misdemeanors. Truss v. State, 81 Tenn. (13 Lea) 311.

In his fourth and fifth assignments of error the defendant contends he was denied his constitutional right to a speedy trial, and that the statute of limitations had expired on assault and battery. These two assignments will be considered together.

We find no merit in this contention. In as much as no evidence was heard on this question it cannot be determined what circumstances caused the delay.

So far as the record shows the prosecution was commenced by the return of an indictment or presentment on February 28, 1968 charging the defendant did on the 25th day of November, 1967, with a pistol shoot James Erwin with intent to kill him. A capias was issued for his arrest March 7, 1968. He executed an appearance bond April 13, 1970, to appear in the Criminal Court of Sullivan County on the 24th day of April, 1970 at which time the case was continued to the next term. The record does not show who asked for the continuance, no objection was shown. Then on September 22, 1970 the record showed the case was continued on motion of the state because the victim was out of the State, to which the defendant objected.

The record fails to show where the defendant was between the return of the indictment February 28, 1968 and the date he executed the appearance bond April 14, 1970 except the minutes of July 8, 1968 show the defendant was being held in the Federal Court in Virginia.

The record shows the defendant filed a motion to dismiss on November 20, 1970 and the court allowed the State until December 4, 1970 to produce evidence on the matter to which the defendant excepted.

On December 2, 1970, the Grand Jury returned a presentment against the defendant, for the same offense on the same date against the same victim because in the first indictment the victim's name was James Erwing instead of James Erwin. The first indictment was dismissed and it was on this last presentment that the defendant was tried and convicted of assault and battery.

At the commencement of the trial the defendant by his counsel made a motion to dismiss or quash the presentment because the offense was alleged to have been committed the 25th day of November, 1967 and the presentment was returned December 2, 1970 and he was denied a fair and speedy trial, and the statute of limitations had run on the offense of assault and battery.

On the hearing of this motion the District Attorney stated to the court that he had in his file on this case letters and papers which showed that the probation officer for the United States District Court of the Eastern District of Virginia gave him information where the defendant was and that the State forwarded to the Governor of Tennessee a petition for extradition of the defendant from the State of Virginia which documents he asked the court to allow him to file to show he made a good faith effort to bring the defendant back to Tennessee.

The court ordered the papers and documents filed in the speedy trial hearing to which defendant objected.

In Arrowsmith v. State, 131 Tenn. 480, 175 S.W. 545 the Court said:

"A 'speedy trial,' so guaranteed, means a trial as soon after indictment as the prosecution can, with reasonable diligence, prepare for it, without needless, vexatious, or oppressive delay, having in view, however, its regulation and conduct by fixed rules of law, any delay created by the operation of which rules does not in legal contemplation work prejudice to the constitutional right of the accused.

"As we have seen, the orders entered on October 24, 1912, by which the several untried cases against Arrowsmith were 'retired from the docket until the expiration of said sentence,' were made in the absence and without the knowledge or consent of the accused, who was at the time an inmate of the state penitentiary, and without the knowledge or consent of his counsel."

There the delay was about two years during which the defendant was serving a sentence in another case and was in the custody of the State and could have been put to trial at anytime the State desired.

Here in the case at bar the delay was approximately two years and the greater part of that time the defendant was evidently in the custody of the United States District Court in Virginia, and not readily available to the State of Tennessee.

Moreover there was nothing to show that the defendant in his trial was in anyway prejudiced by the delay.

In fact he does not show that he was without fault in causing the delay. He has failed to show that the delay deprived him of any right or the benefit of the testimony of any witnesses that he might otherwise have had available.

In the case of United States v. Ewell, 383 U.S. 116, 86 S.Ct. 773, 15 L.Ed2d 627 (1966), a total of nineteen (19) months had elapsed between the arrest of the defendants and the granting of their motions to dismiss the indictments against them. In holding that this delay, during which the defendants had been once tried and convicted but had their convictions vacated because of defective indictments, did not constitute a denial of the defendant's right to a speedy trial, the Supreme Court said:

". . . This guarantee is an important safeguard to prevent undue and oppressive incarceration prior to trial, to minimize anxiety and concern accompanying public accusation and to limit the possibilities that long delay will impair the ability of an accused to defend himself. However, in large measure because of the many procedural safeguards provided an accused, the ordinary procedures for criminal prosecution are designed to move at a deliberate pace. A requirement of unreasonable speed would have a deleterious effect both upon the rights of the accused and upon the ability of society to protect itself. Therefore, this Court has consistently been of the view that "The right of a speedy trial is necessarily relative. It is consistent with delays and depends upon circumstances. It secures rights to a defendant. It does not preclude

the rights of public justice.' Beavers v. Haubert, 198 U.S. 77, 87, 25 S.Ct. 573, 576, 49 L.Ed. 950. 'Whether delay in completing a prosecution * * * amounts to an unconstitutional deprivation of rights depends upon the circumstances. * * * The delay must not be purposeful or oppressive,' Pollard v. United States, 352 U.S. 354, 361, 77 S.Ct. 481, 486, 1 L.Ed.2d 393. (T)he essential ingredient is orderly expedition and not mere speed. Smith v. United States, 360 U.S. 1, 10, 79 S.Ct. 991, 997, 3 L.Ed.2d 1041.'' 383 U.S. at 120, 86 S.Ct. at 776, 15 L.Ed.2d at 630-631.

■ Concerning defendant's question on the statute of limitations we find that the offense was committed November 25, 1967, that the prosecution was commenced by the finding of the Grand Jury presentment on February 28, 1968 approximately 95 days later and that the defendant was under indictment all of the rest of the times until his trial and conviction and that the prosecution was commenced within the period prescribed by the law.

The assignments of error are overruled and the judgment is affirmed.

Galbreath, J., did not participate in the decision in this case.

Dwyer, J., concurs.