# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs August 13, 2003

## STATE OF TENNESSEE v. DOYLE GILBERT NEWSOM

**Direct Appeal from the Circuit Court for Bedford County**
**No. 15024     Lee Russell, Judge**

---

**No. M2002-01696-CCA-R3-CD - Filed December 23, 2003**

---

The defendant, Doyle Gilbert Newsom, was convicted by a Bedford County jury of fifth offense driving under the influence of an intoxicant, driving on a revoked driver's license, and violation of the implied consent law. He received sentences of six years at 60% incarceration as a career D.U.I. offender, and 11 months, 29 days for driving on a revoked license. In this appeal the defendant claims that: (1) the evidence is insufficient to support the D.U.I. conviction because the testimony of an accomplice was not sufficiently corroborated; (2) he was improperly sentenced to 11 months, 29 days for driving on a revoked license; and (3) the prior judgments of conviction are invalid. We find no merit to any of these contentions. Therefore, the judgments of the trial court are affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Trial Court are Affirmed.**

JERRY L. SMITH, J., delivered the opinion of the court, in which GARY R. WADE, P.J. and DAVID G. HAYES, J., joined.

Michael J. Collins, Assistant Public Defender, Shelbyville, Tennessee, for the appellant, Doyle Gilbert Newsom.

Paul G. Summers, Attorney General & Reporter; David H. Findley, Assistant Attorney General; Mike McCown, District Attorney General; and Michael Randles, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### Factual Background

At approximately 8:00 p.m. on June 8, 2001, a Tennessee State Trooper and emergency medical personnel responded to the scene of a single-vehicle accident on Simms Springs Road in Bedford County. The responders found the defendant lying injured next to the driver's side of a truck that had crashed into a large tree stump when the driver had failed to negotiate a curve.

Although seriously injured, the defendant was conscious, and he refused to provide a blood sample for alcohol testing. The defendant also denied being intoxicated and being the driver of the truck. The state trooper smelled alcohol coming from the defendant's person.

A Mr. Ronnie Campbell was also found at the accident scene. Mr. Campbell had injuries consistent with his body having slid across asphalt. Campbell said he was the owner of the truck, and he admitted he had been drinking shortly before the crash, but he stated the defendant had been driving at the time of the crash.

After the defendant was released from the hospital, law enforcement authorities arrested the defendant for D.U.I. At the time of his arrest, the defendant was found hiding in some trees behind his brother's house.

At the trial, Mr. Campbell testified that he and the defendant had been drinking earlier in the afternoon of June 8, 2001. Campbell eventually drove his truck to a convenience store to buy gas. At that time, the defendant asked to drive Campbell's truck. Campbell acquiesced and gave the defendant the ignition keys. As the defendant drove the pair down Simms Springs Road, the defendant attempted to round a curve at too great a speed. This action threw Campbell against the passenger door, which opened, causing Campbell to fall out and slide across the asphalt. The truck crashed into a large tree stump. Campbell found the injured defendant lying on the ground outside the driver's door. Campbell admitted that both he and the defendant were intoxicated at the time of the crash.

Dr. Robert Westover testified that he treated the defendant upon his arrival at the hospital. The defendant's blood alcohol level at that time was .27.

On behalf of the defendant, Ms. Tracy Carmen testified she had witnessed Campbell and the defendant leaving the convenience store where Campbell stated he and the defendant had gone to purchase gas. She stated that Campbell was driving the truck as he and the defendant left the store. Ms. Carmen stated that upon hearing the sirens of the emergency vehicles responding to the crash, she followed the sound and arrived at the crash site. There she saw the defendant lying on the passenger side of the truck along with his cigarettes and lighter.

Sufficiency of Corroboration of Accomplice Testimony

The defendant contends that there was insufficient evidence to corroborate the testimony of Ronnie Campbell, and thus his conviction cannot stand as a matter of law. D.U.I. first, second and third offenses are misdemeanors punishable by a maximum sentence of eleven months and twenty-nine days. Tenn. Code Ann. § 55-10-403(a)(1); see also Tenn. Code Ann. § 39-11-110 (declaring offenses whose maximum punishment is less than one year of imprisonment to be misdemeanors). The accomplice corroboration rule does not apply in misdemeanors. Warden v. State, 381 S.W.2d 247, 248 (Tenn. 1964); Truss v. State, 81 Tenn. 311 (1884); Palmer v. State, 475 S.W.2d 189, 194 (Tenn. Crim. App. 1971). However, the legislature has declared a fourth or subsequent conviction

for D.U.I. to be a Class E felony which causes a maximum penalty of six (6) years imprisonment. Tenn. Code Ann. §§ 55-10-403(a)(1), 40-35-111(b)(5); State v. Samuel Lee Partin, No. E2002-00094-CCA-R3-CD, 2002 WL 31528552, at *2 (Tenn. Crim. App. at Knoxville, Nov. 15, 2002); State v. Ronnie Lamar Evans, No. E2000-00327-CCA-R9-CO, 2001 WL 501414, at *3 (Tenn. Crim. App. at Knoxville, May 11, 2001). Because the instant case involves a fifth offense D.U.I. the accomplice corroboration rule applies.

As our supreme court has recently reiterated, "[i]n Tennessee, a conviction may not be based solely upon the uncorroborated testimony of an accomplice." State v. Shaw, 37 S.W.3d 900, 903 (Tenn. 2001). "An accomplice is one who knowingly, voluntarily, and with common intent unites with the principal offender in the commission of a crime." State v. Allen, 976 S.W.2d 661, 666 (Tenn. Crim. App. 1997). The general test is whether the accomplice could be indicted for the offense charged against the defendant. See id.

> To corroborate the testimony of an accomplice:
> [T]here must be some fact testified to, entirely independent of the accomplice's testimony, which, taken by itself, leads to the inference, not only that a crime has been committed, but also that the defendant is implicated in it; and this independent corroborative testimony must also include some fact establishing the defendant's identity. This corroborative evidence may be direct or entirely circumstantial, and it need not be adequate, in and of itself, to support a conviction; it is sufficient to meet the requirements of the rule if it fairly and legitimately tends to connect the defendant with the commission of the crime charged. It is not necessary that the corroboration extend to every part of the accomplice's evidence. The corroboration need not be conclusive, but it is sufficient if this evidence, of itself, tends to connect the defendant with the commission of the offense, although the evidence is slight and entitled, when standing alone, to but little consideration.

State v. Gaylor, 862 S.W.2d 546, 552 (Tenn. Crim. App. 1992) (quoting Hawkins v. State, 4 Tenn. Crim. App. 121, 133-34, 469 S.W.2d 515, 520 (1971)). "Only slight circumstances are required to corroborate an accomplice's testimony." State v. Griffis, 964 S.W.2d 577, 589 (Tenn. Crim. App. 1997).

As noted by the State in its brief, there were two questions for the jury in this case: (1) was the defendant intoxicated; and (2) was the defendant driving. As to the former, Ronnie Campbell's testimony was corroborated by Dr. Robert Westover, who testified that the defendant's blood alcohol was .27 upon his admittance to the hospital following the accident.

As to the latter, Campbell's testimony that the defendant was driving and that he was a passenger and fell out of the car just prior to the accident was corroborated by Trooper Blackwell's testimony that the only injury suffered by Campbell was "road rash" on his back and shoulders, which he testified occurs when someone "slides across an asphalt roadway."

Additionally, both Trooper Blackwell and EMT Captain Brian Bruce testified that the defendant was found on the ground just outside the driver's side door.

Finally, both Trooper Blackwell and Deputy Williams testified that when they went to the residence of the defendant's brother, looking for the defendant, he was found hiding in the woods behind the house. Guilt can be inferred from a defendant's flight. See, e.g., State v. Kendricks, 947 S.W.2d 875, 886 (Tenn. Crim. App. 1996) (inferring guilt from defendant's flight, in combination with the other facts and circumstances in the case); State v. Larry Hughes, No. 55, 1990 WL 113803, at *2 (Tenn. Crim. App. at Knoxville Aug. 10, 1990) (holding that defendant's flight into backyard of his home after officers approached, such could be considered for purposes of corroborating accomplice testimony). There was sufficient corroboration to support Mr. Campbell's testimony and the judgment of the trial court is affirmed.

### The Defendant's Eleven Month, Twenty-Nine Day Sentence for Driving on a Revoked License

The defendant complains on appeal that he should have received a maximum sentence of only six months for his conviction for driving on a revoked license. A six-month maximum sentence is available only for first offenders of the law prohibiting driving on a revoked or suspended license. Tenn. Code Ann. § 55-50-504(a)(1). In this case, the presentence report reveals that in November 1997, the defendant was convicted of driving on a revoked license in Marshall County, Tennessee. Tennessee Code Annotated section 55-50-504(a)(2) provides that a second or subsequent conviction for driving on a revoked license is a Class A misdemeanor. The maximum sentence for a Class A misdemeanor is generally eleven months, twenty-nine days, and a fine of not more than $2,500. Tenn. Code Ann. § 40-35-111(e)(1). In view of the fact that the conviction for driving on a revoked license in this case is the defendant's second, and in view of the defendant's extensive criminal record, a sentence of eleven months and twenty-nine days is amply supported by the record. This issue lacks merit.

### Validity of Prior D.U.I. Convictions

The defendant contends that his prior D.U.I. judgments are invalid on their face because he was not advised, at the time those judgments were entered, that they could be used to enhance any sentence he might receive as a result of future D.U.I. convictions. See Tenn. Code Ann. § 55-10-403(g)(1). Accordingly, he contends that he should only be sentenced for D.U.I., first offense.

The supreme court has held that "a facially valid, unreversed judgment in a court with jurisdiction over the subject matter and the person cannot be collaterally attacked in a subsequent proceeding except by the authorized routes of attack." State v. McClintock, 732 S.W.2d 268, 271 (Tenn. 1987). Most recently, this Court reiterated that holding in the very context the petitioner brings now, finding that "'[55-10-403(g)(1)] does not require that a defendant have received such notice prior to being sentenced on a second or subsequent offense.'" State v. Posey, 99 S.W.3d 141,

145 (Tenn. Crim. App. 2002) (quoting State v. George S. Mercier, No. 02C01-9404-CC-00066, 1994 WL 568345, at *1 (Tenn. Crim. App. at Jackson, Oct. 19, 1994)). This Court concluded in Posey that failure to adhere to 55-10-403(g) does not render prior judgments invalid. Posey, 99 S.W.3d at 145. Because a challenge in the most recent D.U.I. proceeding of the validity of prior D.U.I. convictions is inappropriate we find this issue to be without merit.

## CONCLUSION

For the foregoing reasons, we affirm the judgments of the trial court.

_____
JERRY L. SMITH, JUDGE