IN THE SUPREME COURT OF TENNESSEE
AT KNOXVILLE
May 6, 2009 Session

**STATE OF TENNESSEE v. NEDDIE MACK LAWSON**

**Appeal by Permission from the Court of Criminal Appeals
Circuit Court for Claiborne County
No. 13055     E. Shayne Sexton, Judge**

_____

**No. E2007-00330-SC-R11-CD - Filed August 24, 2009**

_____

The defendant was originally indicted for driving under the influence, second offense. More than one year after the arrest, the grand jury returned a second indictment, charging the defendant with driving under the influence, fourth offense, a Class E felony. The State filed a nolle prosequi as to the first indictment and, upon motion by the defendant, the trial court granted an order to expunge these records. At trial, the defendant was convicted of driving under the influence, third offense, a misdemeanor. The Court of Criminal Appeals affirmed. This Court granted review in order to determine whether the one-year statute of limitations applicable to misdemeanors barred the prosecution. Because the trial court properly took judicial notice of the pendency of the first indictment at the time of the second, the statute of limitations, regardless of the efficacy of the order of expunction, was tolled and the prosecution was timely. The judgment is, therefore, affirmed.

**Tenn. R. App. P. 11 Appeal by Permission; Judgment of the Court of Criminal Appeals
Affirmed**

GARY R. WADE, J., delivered the opinion of the court, in which JANICE M. HOLDER, C.J., CORNELIA A. CLARK, WILLIAM C. KOCH, JR., and SHARON G. LEE, JJ., joined.

Michael Glenn Hatmaker, Jacksboro, Tennessee, for the appellant, Neddie Mack Lawson, I.

Robert E. Cooper, Jr., Attorney General & Reporter; Michael E. Moore, Solicitor General; Leslie E. Price, Assistant Attorney General; William Paul Phillips, District Attorney General; and Amanda Sammons, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**Factual Background**

On June 20, 2005, Officer Larry Mozingo of the Claiborne County Sheriff's Department observed Neddie Mack Lawson (the "Defendant") and one other individual driving four-wheel, all-terrain vehicles (ATVs) on State Highway 90. As Officer Mozingo began to follow the two vehicles with his cruiser, he observed that the Defendant was holding loosely onto the handlebars of his ATV and weaving on and off the roadway, coming perilously "close to striking one of the road signs." The other driver appeared to be in proper control of his ATV and was not stopped. When Officer Mozingo activated his blue lights and siren in an effort to stop the Defendant, the Defendant continued to drive until the officer used his cruiser to force him to the side of the highway. Two unopened cans of alcoholic beverages were placed behind the seat of the ATV, and two more unopened cans were between the seat and the rear rack. After determining that the Defendant smelled strongly of alcohol and had slurred speech, the officer asked the Defendant if he could perform a field sobriety test, and the Defendant responded that he could not. When questioned, the Defendant admitted that he, together with his friend, had drunk "about a case" of beer. The Defendant, who was covered in mud and had blood on his face, arms, and legs, explained that he had wrecked the ATV while riding in the mountains. He was unable to stand without leaning on the vehicle, and the officer seated him on the pavement in front of the ATV so he would not fall and further injure himself. After being transported to the hospital, the Defendant consented to a blood alcohol test and was treated for his injuries. His blood alcohol content was measured at .19 percent.

Initially, the Defendant was indicted for driving under the influence, second offense, a misdemeanor.[1] Later, the State discovered that he had as many as three prior convictions for driving under the influence. On August 8, 2006, some fourteen months after the arrest, the Grand Jury

---

[1] At the time of the offense, Tennessee Code Annotated section 55-10-403(a)(1) (2004) stated as follows:

Any person or persons violating the provisions of §§ 55-10-401 – 55-10-404 shall, upon conviction thereof, for the first offense be fined not less than three hundred fifty dollars ($350) nor more than one thousand five hundred dollars ($1,500), and such person or persons shall be confined in the county jail or workhouse for not less than forty-eight (48) hours nor more than eleven (11) months and twenty-nine (29) days; and the court shall prohibit such convicted person from driving a vehicle in the state of Tennessee for a period of time of one (1) year. . . . For conviction on the second offense, there shall be imposed a fine of not less than six hundred dollars ($600) nor more than three thousand five hundred dollars ($3,500), and the person or persons shall be confined in the county jail or workhouse for not less than forty-five (45) days nor more than eleven (11) months and twenty-nine (29) days, and the court shall prohibit such convicted person or persons from driving a vehicle in the state of Tennessee for a period of time of two (2) years. Upon the conviction of a person on the second offense only, a judge may sentence such person to participate in a court approved alcohol or drug treatment program. For the third conviction, there shall be imposed a fine of not less than one thousand one hundred dollars ($1,100) nor more than ten thousand dollars ($10,000), and the person or persons shall be confined in the county jail or workhouse for not less than one hundred twenty (120) days nor more than eleven (11) months and twenty-nine (29) days, and the court shall prohibit such convicted person or persons from driving a vehicle in the state of Tennessee for a period of time of not less than three (3) years nor more than ten (10) years.

returned a second indictment, alleging driving under the influence, fourth offense, a Class E felony.[2] The Defendant then filed a motion to dismiss "all misdemeanor counts, lesser included or specifically charged, with regard to" the second indictment. Afterward, he filed a second motion to dismiss, arguing that the one-year statute of limitations applied because the underlying offense, driving under the influence, was a misdemeanor, and felony driving under the influence was merely an "enhancement offense." See Tenn. Code Ann. § 40-2-102(a) (2003) ("Except as [otherwise] provided . . . all prosecutions for misdemeanors shall be commenced within twelve (12) months next after the offense has been committed . . . ."). The trial court denied each of the motions, ruling that the second indictment was timely because the two-year statute of limitations applied. See Tenn. Code Ann. § 40-2-101(b)(4) (2003) ("Prosecution for a felony offense shall begin within . . . [t]wo (2) years for a Class E felony."). At the same hearing, however, the trial court did grant a defense motion to expunge the records pertaining to the first indictment based upon the nolle prosequi filed by the State. See Tenn. Code Ann. § 40-32-101(a)(3) (2003) ("Upon petition by a defendant in the court which entered a nolle prosequi in the defendant's case, the court shall order all public records expunged.").

At the conclusion of the first phase of the bifurcated trial, the jury returned a verdict of guilt as to the primary charge of driving under the influence. During the penalty phase of the trial, the State presented certified copies of three previous judgments of conviction for driving under the influence. The trial court, however, excluded one of the documents, a February 25, 1992 judgment in Dalton, Georgia, as insufficiently reliable for admission as evidence. At that point, the Defendant successfully sought dismissal of the felony count because there were insufficient underlying offenses to support it. Later, after the jury received evidence of the prior convictions, the Defendant argued that because the exclusion of one of the three prior convictions limited the charge to a misdemeanor, the one-year statute of limitations barred the prosecution. The trial court denied the Defendant's motion to dismiss, holding that the statute of limitations was not a bar. Ultimately, the jury found the Defendant guilty of driving under the influence, third offense, a misdemeanor. The trial court imposed a sentence of eleven months and twenty-nine days, seventy-five percent of service, with 150 days of confinement in jail. The Defendant was fined $7,500.

---

[2] Section 55-10-403(a)(1) further stated:

Notwithstanding any other provision of law to the contrary, the fourth or subsequent conviction shall be a Class E felony punishable by a fine of not less than three thousand dollars ($3,000) nor more than fifteen thousand dollars ($15,000); by confinement for not less than one hundred fifty (150) consecutive days, to be served day for day, nor more than the maximum punishment authorized for the appropriate range of a Class E felony; and the court shall prohibit the person from driving a motor vehicle for a period of five (5) years. For the provisions of the preceding sentence to apply, at least one (1) of the violations of § 55-10-401 must occur on or after July 1, 1998.

After the trial, defense counsel filed a motion for judgment of acquittal, again asserting that the one-year statute of limitations as to misdemeanors precluded the conviction.[3] While recognizing that the statute of limitations is tolled when a second or superseding indictment is filed while the original indictment was still pending, defense counsel pointed out that the order of expunction left the State without any proof that the previous indictment was pending when the second indictment was returned. At the conclusion of the hearing, the trial court denied the motion.[4]

On appeal, our Court of Criminal Appeals affirmed, ruling that the State was entitled to file the second, superseding indictment so long as the original indictment was pending and holding that the one-year statute of limitations applicable to misdemeanors did not, therefore, prevent prosecution. State v. Lawson, No. E2007-00330-CCA-R3-CD, 2008 WL 2557361, at *7 (Tenn. Crim. App. June 26, 2008). Our intermediate appellate court acknowledged that the prior indictment had been expunged, but ruled that it was the duty of the Defendant, not that of the State, to provide a transcript "with respect to those issues that are the bases of the appeal." Id. at *6 (quoting Tenn. R. App. P. 24(b)). We granted the application for permission to appeal in order to determine whether there was adequate proof, in light of the order of expunction, to establish that the statute of limitations on commencing the prosecution of a misdemeanor was tolled by the filing of a timely prior indictment.

## Analysis

The State, while acknowledging "the limited record" as to the first indictment, nevertheless argues that the indictment was clearly pending upon the return of the second indictment, thereby tolling the limitations period for a misdemeanor. The Defendant, however, maintains that the State has failed to establish any basis for an extension of the one-year limit. Because the record demonstrates that the trial court took judicial notice of the pendency of the prior indictment before granting the order expunging the underlying records, the one-year statute of limitations was tolled and did not bar the prosecution.

## I.  Judicial Notice

Judicial notice is defined as an acceptance by a court, "for purposes of convenience and without requiring . . . proof, of a well-known and indisputable fact." Black's Law Dictionary 863-64 (8th ed. 2004). Traditionally, Tennessee courts have taken judicial notice of certain facts "as a substitute for the production of evidence." Metro. Gov't of Nashville & Davidson County v. Shacklett, 554 S.W.2d 601, 605 (Tenn. 1977). The purpose of the doctrine is to save time and dispense with the necessity of the presentation of proof. State ex rel. Schmittou v. City of Nashville,

---

[3] A defendant who is both indicted for a felony that includes a misdemeanor and subsequently acquitted of the felony but convicted of the misdemeanor is entitled to a discharge if the offense was committed more than one year before the initial indictment. Hickey v. State, 174 S.W. 269 (Tenn. 1915); Turley v. State, 50 Tenn. (3 Heisk.) 11, 13 (1870); see also Smith v. State, 327 S.W.2d 308, 326 (Tenn. 1959) (finding no error when the trial court refused to instruct the jury on lesser-included offenses that were barred by the statute of limitations).

[4] The transcript of the hearing held on January 12, 2007, establishes that the trial court denied the motion for judgment of acquittal. On May 8, 2009, the record was supplemented to include the order denying relief.

345 S.W.2d 874, 883 (Tenn. 1961); State v. Nunley, 22 S.W.3d 282, 287 (Tenn. Crim. App. 1999). Resort to judicial notice is, however, subject to limitations, as indicated by Rule 201 of the Tennessee Rules of Evidence, effective January 1, 1990, which is virtually identical to its counterpart under the Federal Rules of Evidence. Our rule provides as follows:

> (a) Scope of Rule. This rule governs only judicial notice of adjudicative facts.
> (b) Kinds of Facts. A judicially noticed fact must be one not subject to reasonable dispute, in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.
> (c) When Discretionary. A court may take judicial notice whether requested or not.
> (d) When Mandatory. A court shall take judicial notice if requested by a party and supplied with the necessary information.
> (e) Opportunity to Be Heard. A party is entitled upon timely request to an opportunity to be heard as to the propriety of taking judicial notice and the tenor of the matter noticed. In the absence of prior notification, the request may be made after judicial notice is taken.
> (f) Time of Taking Notice. Judicial notice may be taken at any stage of the proceeding.
> (g) Instructing the Jury. In a civil action or proceeding, the court shall instruct the jury to accept as conclusive any fact judicially noticed. In a criminal case, the court shall instruct the jury that it may, but is not required to, accept as conclusive any fact judicially noticed.

Tenn. R. Evid. 201.

Courts, therefore, "may take judicial notice whether requested or not" and may do so "at any stage of the proceeding." This rule applies to both trial and appellate courts. See, e.g., Gov't of the Canal Zone v. Burjan, 596 F.2d 690, 694 (5th Cir. 1979); Dash v. Carlton, No. E2001-02867-CCA-R3-PC, 2002 WL 31026613, at *3 (Tenn. Crim. App. Sept. 11, 2002). Further, even when a trial court fails to take judicial notice, the appellate courts may do so upon review. See Central Green Co. v. United States, 531 U.S. 425, 434 (2001); Stone v. United States, 326 F.3d 785, 789 n.1 (6th Cir. 2003). This Court "may consider . . . any additional facts . . . judicially noticed." Tenn. R. App. P. 13(c); see also State ex rel. Wilkerson v. Bomar, 376 S.W.2d 451, 453 (Tenn. 1964) ("This court may, of course, take judicial notice of facts in an earlier proceeding of the same case and the final action of the court thereon."); Givens v. State, 702 S.W.2d 578, 579 (Tenn. Crim. App. 1985).[5]

---

[5] A judge is not, however, to use knowledge that he or she has gained only as an individual observer outside of the judicial proceedings. 9 John Henry Wigmore, Evidence in Trials at Common Law § 2569, at 723 (Chadbourn rev. ed. 1981). A decision may not be based upon the personal knowledge of the judge, but only upon the facts learned by virtue of the legal procedures in which the judge plays a neutral role. Vaughn v. Shelby Williams of Tenn., Inc., 813 S.W.2d 132, 133 (Tenn. 1991). Stated differently, "[i]t matters not what is known to the judge personally if it be not known to him in his official capacity." Galbreath v. Nolan, 429 S.W.2d 447, 450 (Tenn. Ct. App. 1967).

Prior to the adoption of our Rules of Evidence, judges in the trial courts of our state were permitted to take notice not only of the filings in their own proceedings, Sims v. Barham, 743 S.W.2d 179, 181 (Tenn. Ct. App. 1987), but of also an earlier hearing in the same action. Carmack v. Fidelity-Bankers Trust Co., 177 S.W.2d 351, 352 (Tenn. 1944). Facts relating to the operation of the courts, matters occurring within the immediate trial or appeal, or developments in a prior trial or prior proceedings all have been subject to judicial notice. Delbridge v. State, 742 S.W.2d 266, 267 (Tenn. 1987); State ex rel. Inman v. Brock, 622 S.W.2d 36, 52 (Tenn. 1981), cert. denied, 454 U.S. 941 (1981); Counts v. Bryan, 182 S.W.3d 288, 293 (Tenn. Ct. App. 2005). For example, this Court has taken judicial notice of the minutes of the trial court in order to determine the propriety of a petition for habeas corpus relief. State ex rel. Newsome v. Henderson, 424 S.W.2d 186, 188 (Tenn. 1968). While observing in Henderson that judicial notice does not extend to the knowledge gained by the trial judge in a personal capacity, this Court did permit judicial notice of those readily verifiable "facts which a judge under rules of legal procedure may properly take or act upon without proof." Id. Thus, those matters pertaining to the records of a court are subject to judicial notice by the judge of that court. See generally Robert Banks, Jr. & Elizabeth T. Collins, Judicial Notice in Tennessee, 21 Mem. St. U. L. Rev. 431 (1991).

Judicial interpretations of the corresponding federal rule provide support for the proposition that "[i]f the records are of the court itself, they may be judicially noticed and need not be proved." 2A Charles A. Wright et al., Federal Practice and Procedure: Criminal § 441, at 254 (3d ed. 2000). In Mangiafico v. Blumenthal, 471 F.3d 391, 398 (2d Cir. 2006), the Second Circuit Court of Appeals upheld the district court's reliance upon a docket sheet which, as a public record, was a proper subject of judicial notice. Further, the federal courts have approved the taking of judicial notice of filed documents so long as the purpose was "to establish the fact of such litigation and related filings," rather than to establish the truth of the matters asserted in the other litigation. Liberty Mut. Ins. Co. v. Rotches Pork Packers, Inc., 969 F.2d 1384, 1388 (2d Cir. 1992) (quoting Kramer v. Time Warner Inc., 937 F.2d 767, 774 (2d Cir. 1991)). Further, in Lee v. City of Los Angeles, 250 F.3d 668, 689-90 (9th Cir. 2001), the Ninth Circuit determined that the district court had properly taken judicial notice of a waiver of extradition form and the transcript of the extradition hearing, which were matters of public record. Other federal cases concur in the axiom that if the proceedings are of a particular court, that court may appropriately take judicial notice. See, e.g., United States v. McCargo, 783 F.2d 507, 509 (5th Cir. 1986); United States v. Crow Dog, 532 F.2d 1182, 1188 n.5 (8th Cir. 1976), cert. denied, 430 U.S. 929 (1977).

Before considering the Defendant's request to expunge the first indictment in this case, the trial court addressed and refused to grant the Defendant's motion to dismiss the second indictment. Thereafter, the following exchange took place:

MR. HATMAKER (for the Defendant): [I]f I've ever been right on a motion, [the motion to expunge i]s it.

THE COURT: . . . . [I]s there any objection to that?

MS. SAMMONS (for the State): Your Honor, the only objection that I had to Mr. Hatmaker getting me to sign [a proposed order of expungement] any sooner was that the motions to dismiss [the second indictment] were coming up today, and I thought you might need to consider the prior indictment[,] so I didn't want to have it expunged yet until we had considered that.

THE COURT: Considering the prior indictment is probably . . . without question, the most problematic thing that you have . . . .

    . . . .

MS. SAMMONS: I mean, you did say that it could be brought up at trial, the issue of whether we preserved anything with the prior indictment. I just don't want us to come to trial and then if the issue should come up of whether the misdemeanor is chargeable . . . when the prior indictment was dismissed . . . .

THE COURT: . . . I mean, the expungement from the record will not prevent you from doing that type of thing.

MS. SAMMONS: Okay.

THE COURT: . . . . I'm assuming the defendant just wants that off. There may be other--

MR. HATMAKER: Oh, no. I'm doing it purely for what the State anticipates I'm doing it.

THE COURT: All right.

MR. HATMAKER: Absolutely. I admit it, acknowledge it, and intend to rely upon that expunction . . . .

    . . . .

THE COURT: Upon motion of the defendant . . . I'm gonna grant it. . . . And the net effect of it . . . let's just see what happens down the line.

MR. HATMAKER: Correct.

(Emphasis added).

Moreover, several weeks after the return of the guilty verdict and the expunction of the records pertaining to the first indictment, the trial court made reference to the prior indictment:

-7-

THE COURT: I remember. I don't have to [look at the records]. I know how all that happened. And the question is whether what . . . effect does that have – the charging instrument that went to trial [and] was returned over a year after the original offense date. . . . [C]ertainly, on the face of the indictment the statute of limitation was fine.

(Emphasis added). While denying the Defendant's motion for a judgment of acquittal, the trial court, specifically acknowledging the pendency of the first indictment at the filing of the second, superseding indictment, ruled that the one-year limitations period had been tolled and the prosecution was timely.

In our assessment, the trial court properly exercised its discretionary authority to acknowledge the existence of the first indictment at the time the superseding indictment was entered. At that point in the proceedings, the pendency of the indictment was "not subject to reasonable dispute" and was "capable of accurate and ready determination by resort to" the record of the proceedings, the accuracy of which could not be questioned. Tenn. R. Evid. 201(b). In consequence, we accept as fact the pending status of the first indictment at the issuance of the second. Further, under these circumstances, the Defendant, as the appellant, had the duty to provide any portions of that record that might call into question the propriety of the judicially noticed facts. Tenn. R. App. P. 24(b). He has not, of course, been able to do so.

## II. Statute of Limitations

Tennessee Code Annotated section 40-2-104 (2006 & Supp. 2007) defines the commencement of a prosecution as follows:

A prosecution is commenced . . . by finding an indictment or presentment, the issuing of a warrant, the issuing of a juvenile petition alleging a delinquent act, binding over the offender, by the filing of an information . . . or by making an appearance in person or through counsel in general sessions or any municipal court for the purpose of continuing the matter or any other appearance in either court for any purpose involving the offense.

See also State v. Ferrante, 269 S.W.3d 908, 912 (Tenn. 2008); State v. Tait, 114 S.W.3d 518, 522 (Tenn. 2003). "It is the 'prosecution' which must be commenced within [the limitations period], not the finding of the indictment." Hickey, 174 S.W. at 270. So long as the prosecution begins within the prescribed limitations period, a subsequent indictment may issue despite any delay. Moreover, in State v. Harris, 33 S.W.3d 767 (Tenn. 2000), this Court confirmed that the State had the broad discretion to seek a second or superseding indictment on prior charges:

A superseding indictment is an indictment obtained without the dismissal of a prior indictment. Where there has been no jeopardy on the first indictment, a grand jury may return a new indictment against an accused even though another indictment is pending. . . . Thus, the State may obtain a superseding indictment at any time prior

to trial without dismissing the pending indictment and may then select the indictment under which to proceed at trial.

Id. at 771 (citations omitted).

The long-standing rule of law is that a second or superseding indictment filed beyond the statute of limitations is proper so long as the first indictment was pending and the charges are neither broadened nor substantially amended. State v. Nielsen, 44 S.W.3d 496, 500 (Tenn. 2001); see also Palmer v. State, 475 S.W.2d 189, 196 (Tenn. Crim. App. 1971). Further, the subsequent indictment need not include "commencing facts" to establish that the prosecution was timely and initiated by other of the statutory methods. Messamore v. Powell, 937 S.W.2d 916, 919 (Tenn. 1996); Nielsen, 44 S.W.3d at 499-500. Finally, and pertinent to the issue before us, Tennessee Code Annotated section 55-10-403(a)(1)(A)(iii) provides that a determination of prior offenses for driving under the influence does not qualify as a new offense, but as an enhanced sentence; therefore, the "second phase of the proceeding relates only to punishment and does not add a new charge." State v. Cottrell, 868 S.W.2d 673, 677 n.1 (Tenn. Crim. App. 1992) (citing State v. Ward, 810 S.W.2d 158 (Tenn. Crim. App. 1991)). Thus, the second indictment of the Defendant, even though filed more than one year after the date of the offense, was timely.[6]

Another proposition of law is worthy of note. In State v. Doe, 860 S.W.2d 38 (Tenn. 1993), this Court observed that the purpose of the expunction statute "was to prevent a citizen from bearing the stigma of having been charged with a criminal offense, where he was *acquitted of the charge or prosecution of the charge was abandoned*." Id. at 40 (quoting State v. Doe, 588 S.W.2d 549, 552 (Tenn. 1979), superseded by Act of April 18, 1980, 1980 Tenn. Pub. Acts 1305). We held "that expunction should occur only when no further proceedings against an accused are possible or, if they are, no further action is contemplated." Id. Thus, when a charge has been dismissed without prejudice and the statute of limitations does not bar further prosecution, a trial court should not grant an order of expunction. See id. at 40-41.

In the Doe case, the General Sessions Court had dismissed a charge of driving under the influence at the preliminary hearing. On the following day, the records were expunged pursuant to order. Upon review, this Court acknowledged that the State could present the matter directly to the grand jury regardless of the order expunging the prior records. In an opinion authored by Justice Martha Craig Daughtrey, this Court ruled that the expunction order had "lost its legal efficacy" when

---

[6] In State v. Seagraves, 837 S.W.2d 615 (Tenn. Crim. App. 1992), the appellant was indicted and tried on a charge of second degree murder, but was convicted only of involuntary manslaughter, a lesser-included offense for which the limitations period had expired eighteen years prior to the prosecution's commencement. The prosecution also "did not allege or make an effort to establish that the statute of limitations had been tolled based upon the appellant's conduct following the commission of the alleged offense." Id. at 619. Accordingly, our Court of Criminal Appeals concluded that "the trial court did not have subject-matter jurisdiction to try the appellant for the lesser included offense of involuntary manslaughter," and the conviction on that charge was a nullity. Id. at 621. The Defendant argues that this holding is controlling; however, our determination that the first indictment was pending when the second was returned, thereby tolling the one-year limitations period, precludes consideration of the principle established in Seagraves.

the State continued proceedings against the defendant. The State was "free to prosecute the case . . . as if the order had never been entered," regardless of the State's failure to object or appeal in the initial expunction proceeding. Id. at 41.

## Conclusion

Under these circumstances, the trial court properly took judicial notice of its own prior proceedings. Because the first indictment was timely and pending at the time the grand jury returned the second indictment, the one-year statute of limitations applicable to misdemeanors was tolled. The order of expunction should not have been entered and is of no effect. The judgment of the trial court is, therefore, affirmed. Costs of this appeal are assessed to the appellant, Neddie Mack Lawson, and his surety, for which execution may issue if necessary.

_____
GARY R. WADE, JUSTICE