IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs November 12, 2015


**STATE OF TENNESSEE v. DEMONTISE MARTEZ DRUMWRIGHT
a.k.a DEMONTISE J. DRUMWRIGHT**

**Appeal from the Criminal Court for Davidson County
No. 2014-B-1446     Steve R. Dozier, Judge**

_____

**No. M2015-00098-CCA-R3-CD – Filed December 17, 2015**

_____


Demontise Martez Drumwright a.k.a. Demontise J. Drumwright ("the Defendant") pleaded guilty to one count each of aggravated burglary and robbery. The trial court denied alternative sentencing, ordering the Defendant to serve his effective four-year sentence in confinement. On this appeal, the Defendant claims that the trial court erred when it (1) considered the Defendant's pending case in Knox County as a basis for denial of alternative sentencing and (2) ordered the Defendant to serve his sentence in confinement. Discerning no error, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

ROBERT L. HOLLOWAY, JR., J., delivered the opinion of the Court, in which NORMA MCGEE OGLE and CAMILLE R. MCMULLEN, JJ., joined.

Brian M. Griffith, Nashville, Tennessee, for the appellant, Demontise Martez Drumwright a.k.a. Demontise J. Drumwright.

Herbert H. Slatery III, Attorney General and Reporter; Sophia S. Lee, Senior Counsel; Glenn Funk, District Attorney General; and Jennifer Charles, Assistant District Attorney General, for the appellee, State of Tennessee.


**OPINION**

**Factual and Procedural Background**

The Defendant, along with co-defendants Secquoyah Smikes and Keiahtee Terrell, was indicted for one count of aggravated burglary while acting in concert with two or

more persons and one count of robbery while acting in concert with two or more persons. The Defendant pleaded guilty, as a Range I standard offender, to aggravated burglary and robbery.  Pursuant to a plea agreement, the Defendant was sentenced to concurrent four-year sentences with the manner of service to be determined by the trial court.  The State provided the following factual basis for the plea:

Had the parties proceeded to trial on case number 2014-B-1146, the State anticipates the facts at trial would reveal that on March the 14th of last year, a hotel employee reported two male subjects were attempting to break into room 284 at the Econo Lodge, located at 1412 Brick Church Pike here in Davidson County.  Several officers responded to the call.

When Officer Brown arrived on the scene, [the Defendant] was inside room 284.  [The Defendant] was screaming, walking around the room and refused to follow officers['] instructions.  Officers escorted [the Defendant] out of the room.  The victim Robert Hammonds was hiding in the bathroom.  [Ms. Smikes] and [Mr. Terrell] were located in the parking lot.  [Mr.] Hammonds related the following: He and Ms. Smikes were going to spend the night together at that location.  At about 11:00 p.m. someone knocked on the door.  Mr. Hammonds looked out of the peephole and saw two men standing outside of the room.  He recognized one of the subjects as Ms. Smikes['] ex[-]boyfriend, [Mr. Terrell].  Ms. Smikes has previously told Mr. Hammonds about how [Mr.] Terrell used to rob people.

[Mr.] Hammonds refused to open the door, the suspects began pounding on the door and kicked it open.  The suspects then forced their way into the room and began assaulting Mr. Hammonds.  He managed to get away from them[,] run into the bathroom and lock[] the door.  The officers noticed scratches to the left side of Mr. Hammond[s'] neck, back and check [sic], his shirt was also ripped.

[Ms.] Smikes originally told the officers that she was also a victim of the assault.  She sustained asthma-type symptoms and was transported to General Hospital that night.  Mr. Terrell told Officer Holycross that his girlfriend Ms. Smikes and Mr. Hammonds met and were going to hang out in a room in the Econo Lodge.  [Mr.] Terrell stated that [Ms.] Smikes contacted him, stated she was uncomfortable with [Mr.] Hammonds and wanted [Mr.] Terrell to come to the room.

[Mr.] Terrell stated that he and [the Defendant] went to the lodge and began banging on the door.  [Mr.] Terrell stated the door opened, stepped inside.  Mr. Hammonds began shutting the door on him.  Mr.

Terrell continued trying to push the door back open. At that time, Mr. Terrell stopped talking to Officer Holycross and refused to provide any other information.

At about 12:45 a.m. Officer Holycross placed Mr. Terrell under arrest and advised him of his rights. He said he understood his rights and refused to talk. Due to discrepancies in her story, Ms. Smikes was questioned again after being advised of her rights by Officer Brown. She then confessed that she helped set Mr. Hammonds up. She agreed to go to the hotel with Mr. Hammonds and have sex with him. [Ms.] Smikes stated she waited until [Mr.] Hammonds was in the shower and then called Mr. Terrell and [the Defendant] to come and rob him.

The plan was to wait until the victim was naked and [Ms.] Smikes would let [the Defendant] and [Mr.] Terrell into the room. And [Mr.] Terrell and [the Defendant] knocked, [Mr.] Hammonds refused to open the door. [Mr.] Hammonds tried without success to stop [Ms.] Smikes from opening the door.

According to Ms. Smikes, [the Defendant] entered the room and began assaulting Mr. Hammonds. After [Mr. Hammonds] locked himself in the bathroom, [the Defendant] took Mr. Hammond[s'] car keys. Ms. Smikes admitted that it was premeditated and [the Defendant] would hide the keys outside of the room in the bushes and retrieve them later and take Mr. Hammond[s'] vehicle. The keys were not recovered.

At a subsequent sentencing hearing, the State introduced the Defendant's presentence report and certified copies of the Defendant's prior convictions as exhibits. The exhibits are not included in the record on this appeal. However, the Defendant's presentence report is included in the record for Mr. Terrell's appeal.[1] The presentence report indicates that the Defendant's probation for his statutory rape conviction was revoked twice, although the reasons for revocation are not included in the report. Additionally, the report indicates that the Defendant was charged with several instances of assault and criminal trespass between 2009 and 2012. The presentence report does not include any details about the charges, but it appears the Defendant was convicted in six of the charges and two charges include a note that the Defendant's probation was revoked.

---

[1] To assist in the resolution of this proceeding, we take judicial notice of the record from Mr. Terrell's direct appeal, State v. Keiahtee Terrell, No. M2015-00019-CCA-R3-CD. See Tenn. R. App. P. 13(c); State v. Lawson, 291 S.W.3d 864, 869 (Tenn. 2009); State ex rel Wilkerson v. Bomar, 376 S.W.2d 451, 453 (Tenn. 1964).

Moreover, the Defendant admitted that he was a member of the Hoover Crips gang in Maury County.

The Defendant testified that he was twenty-three years old at the time of the hearing and that he had a large extended family in Columbia, Tennessee. The Defendant explained that his mother passed away when he was twelve and his father was incarcerated at that time, so the Defendant was placed in state custody until he was eighteen. During that time, he received no support from his extended family and "basically was forgot[ten] about."

The Defendant admitted that he had a prior conviction for statutory rape from Columbia, Tennessee. The Defendant stated that he "had a little dealing with this female" after he was released from the group home at age eighteen and that the girl had become pregnant. The Defendant was placed on supervised probation, but he violated probation by failing to pay his court costs. The Defendant denied that his violation stemmed from his accruing new criminal charges. The Defendant explained that he was unable to pay court costs because he did not have a job and he had to support his daughter,[2] so he decided to serve his sentence. The Defendant stated that he had fathered his daughter "for sure." However, the Defendant stated that he did not have to pay child support to her mother because he had "never been arrested for no child support."

Prior to the instant case, the Defendant lived with his father in Knoxville. At some point, the Defendant moved to Nashville to find a job. While in Nashville, the Defendant lived with his girlfriend, Amber Bruster, Ms. Bruster's father, and Ms. Bruster's son. The Defendant was "supposedly" the father of Ms. Bruster's child.

The Defendant admitted that he had a pending charge in Knox County for "selling crack cocaine" and that there was a $50,000 bond set in that case. The Defendant reported that his step-mother was willing to post the Defendant's bond if he was released in the instant case in Davidson County. The Defendant explained that he would return to Nashville after he made bond on the Knoxville charges and live with Ms. Bruster. The Defendant stated that he would "also be going to the little Y-Build situation." The Defendant explained that Y-Build was a program that helped people find housing, apply for food stamps, find a job, and "stuff like that." The Defendant testified that he wanted to participate in the Y-Build program because he wanted to change his life.

The Defendant stated that he dropped out of school in the eleventh grade and that he had not gotten his GED because he "kept getting incarcerated." The Defendant also admitted that he was charged with assault while he was incarcerated. Additionally, the

---

[2] It is not clear from the record whether the victim in the statutory rape case is the mother of the Defendant's daughter.

Defendant acknowledged that he had gotten into trouble in every city where he had lived after the age of eighteen. The Defendant testified that he had not been employed since he was in high school. The Defendant reported that he had applied to various fast food restaurants but that he was unable to find employment because he did not have proper identification. The Defendant stated that he had tried to get proper identification but was unable to because he lacked a permanent address. The Defendant expressed hope that Y-Build would help him find a job.

The trial court entered a written order denying alternative sentencing. Although the trial court's order is not very detailed, the court did find that the Defendant had an open warrant from Knox County for conspiracy to manufacture and deliver cocaine. The trial court also stated that it had considered the evidence presented at the trial and hearing, the pre-sentence report, the principles of sentencing and arguments as to sentencing alternatives, the nature and characteristics of the criminal conduct involved, evidence offered as to enhancing and mitigating factors, and the Defendant's potential for rehabilitation. In considering the Defendant's suitability for probation, the trial court concluded:

> The [D]efendant has entered a plea agreement to a four[-]year sentence at 30% for each count to run concurrently. Therefore, the only issue before the Court is the manner of service. The Court must consider the lack or potential for rehabilitation in determining the sentence length or how the sentence is to be served. T.C.A. § 40-35-103. In making that determination, the Court notes the [D]efendant's criminal history includes a conviction for Statutory Rape and a probation violation. The Court also notes the serious nature of this offense. The Court does not find that the [D]efendant is a proper candidate for probation, especially with pending charges in Knox County.

Based upon these considerations, the trial court denied the Defendant's request for probation. This timely appeal followed.

## Analysis

The Defendant contends that the trial court erred when it denied alternative sentencing. The Defendant claims that he does not have a long history of criminal conduct as contemplated in Tennessee Code Annotated section 40-35-103(1)(A). In making his argument, the Defendant relies heavily on Tennessee Code Annotated section 40-35-102(6) and claims that that statute "gives an implied approval of alternative sentence[ing]" for the Defendant because he is a Range I offender convicted of a Class C felony. The State argues that the Defendant has failed to overcome the presumption that his sentence is reasonable. We agree with the State.

- 5 -

Initially, we note that the Defendant asserts in his brief that "he should have been afforded the opportunity at some variety of alternative sentence." However, at the sentencing hearing, the Defendant only asked to be placed on probation, and the trial court only considered the Defendant's suitability for probation. As such, we will confine our analysis to the denial of probation.

When the record establishes that the trial court imposed a sentence within the appropriate range that reflects a "proper application of the purposes and principles of our Sentencing Act," this court reviews the trial court's sentencing decision under an abuse of discretion standard with a presumption of reasonableness. State v. Bise, 380 S.W.3d 682, 707 (Tenn. 2012). A finding of abuse of discretion "'reflects that the trial court's logic and reasoning was improper when viewed in light of the factual circumstances and relevant legal principles involved in a particular case.'" State v. Shaffer, 45 S.W.3d 553, 555 (Tenn. 2001) (quoting State v. Moore, 6 S.W.3d 235, 242 (Tenn. 1999)). When applying this standard, this court may not disturb the sentence even if it had preferred a different result. See State v. Carter, 254 S.W.3d 335, 346 (Tenn. 2008). In State v. Caudle, our supreme court expanded its holding in Bise to trial courts' decisions regarding alternative sentencing. State v. Caudle, 388 S.W.3d 273, 278-79 (Tenn. 2012).

In determining the proper sentence, the trial court must consider: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on the mitigating and enhancement factors set out in Tennessee Code Annotated sections 40-35-113 and -114; (6) any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; and (7) any statement the defendant made in the defendant's own behalf about sentencing. See Tenn. Code Ann. § 40-35-210 (2014); State v. Taylor, 63 S.W.3d 400, 411 (Tenn. Crim. App. 2001). The trial court must also consider the potential or lack of potential for rehabilitation or treatment of the defendant in determining the sentence alternative or length of a term to be imposed. Tenn. Code Ann. § 40-35-103 (2014).

To facilitate meaningful appellate review, the trial court must state on the record the factors it considered and the reasons for imposing the sentence chosen. Tenn. Code Ann. § 40-35-210(e) (2014); Bise, 380 S.W.3d at 706. However, "[m]ere inadequacy in the articulation of the reasons for imposing a particular sentence . . . should not negate the presumption [of reasonableness]." Bise, 380 S.W.3d at 705-06. The party challenging the sentence on appeal bears the burden of establishing that the sentence was improper. Tenn. Code Ann. § 40-35-401 (2014), Sentencing Comm'n Cmts.

Under the revised Tennessee sentencing statutes, a defendant is no longer presumed to be a favorable candidate for alternative sentencing. Carter, 254 S.W.3d at 347 (citing Tenn. Code Ann. § 40-35-102(6)). Instead, the "advisory" sentencing guidelines provide that a defendant "who is an especially mitigated or standard offender convicted of a Class C, D or E felony, should be considered as a favorable candidate for alternative sentencing options in the absence of evidence to the contrary." Tenn. Code Ann. § 40-35-102(6). However, no criminal defendant is automatically entitled to probation as a matter of law. State v. Davis, 940 S.W.2d 558, 559 (Tenn. 1997). The defendant bears the burden of proving his or her suitability for probation. Carter, 254 S.W.3d at 347 (citing Tenn. Code Ann. § 40-35-303(b)). The defendant must show that probation "will subserve the ends of justice and the best interests of both the public and the defendant." Hooper v. State, 297 S.W.2d 78, 81 (Tenn. 1956), overruled on other grounds, State v. Hooper, 29 S.W.3d 1, 9-10 (Tenn. 2000).

The trial court should look to the following considerations to determine whether a sentence of confinement is appropriate:

>   (A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
>
>   (B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or
>
>   (C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant.

Tenn. Code Ann. § 40-35-103(1) (2014). The trial court should also consider a defendant's potential or lack of potential for rehabilitation when determining if an alternative sentence would be appropriate. Tenn. Code Ann. § 40-35-103(5) (2014).

We must first address the Defendant's contention that the trial court erred when it relied upon the Defendant's pending case in Knox County to deny alternative sentencing because the Defendant is presumed innocent of those charges until he is convicted. The Defendant also asserts that the State did not present any evidence about the level of the offense and that there was nothing in the record to indicate that the Defendant could not post bond on those charges and return to Nashville to comply with the terms of an alternative sentence. We do not agree with the Defendant's contention that the trial court relied on the pending charges in Knox County to deny probation. The trial court did mention the pending charges at the end of the sentencing order, but it appears that the trial court relied upon evidence in the presentence report to deny probation, not the pending charges in Knox County. However, even if it was error for the trial court to

consider the pending charges in Knox County in its sentencing determination, any such error was harmless because there was sufficient evidence in the record to order the Defendant to serve his sentence in confinement.

In this case, the trial court noted the Defendant's history of criminal conduct and found that he was not "a proper candidate for probation[.]" The record supports the trial court's finding. The Defendant's presentence report indicates that he has prior convictions for assault and criminal trespass. In his testimony at the sentencing hearing, the Defendant admitted that, in addition to the convictions in the instant case, he had a conviction for statutory rape. Moreover, the Defendant was previously sentenced to probation for his statutory rape conviction, and that probation was twice revoked. There was sufficient evidence for the trial court to find that measures less restrictive than confinement had frequently or recently been applied unsuccessfully to the Defendant. See Tenn. Code Ann. § 40-35-103(1) (2014). Accordingly, the trial court did not abuse its discretion when it ordered the Defendant to serve his sentence in confinement.

## Conclusion

For the aforementioned reasons, the judgments of the trial court are affirmed.

_____
ROBERT L. HOLLOWAY, JR., JUDGE