IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
May 29, 2019 Session

**STATE OF TENNESSEE v. CHARLES E. MASON, JR.**

**Appeal from the Circuit Court for Cocke County**
**No. 6500      James L. Gass, Judge**

_____

**No. E2018-01310-CCA-R3-CD**

_____

The Defendant, Charles E. Mason, Jr., pled guilty to four counts of aggravated assault and one count of aggravated stalking charged in three separate indictments and received an aggregate sentence of twenty years to be served on probation. The trial court found the Defendant in violation of his probation for three convictions of aggravated assault and for aggravated stalking and ordered him to serve these sentences in confinement. The Defendant appeals, asserting that the trial court erred in revoking his probation and that the trial court erred by not including graduated sanctions under Tennessee Code Annotated section 40-28-304 when it reinstated his probation approximately six months prior to the instant violation. We conclude that the trial court did not abuse its discretion in revoking the Defendant's probation and that the issue regarding graduated sanctions has been waived. We affirm the trial court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

JOHN EVERETT WILLIAMS, P.J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER and ROBERT L. HOLLOWAY, JR., JJ., joined.

Randall E. Reagan (on appeal) and Troy L. Bowlin, II (at hearing), Knoxville, Tennessee, for the appellant, Charles E. Mason, Jr.

Herbert H. Slatery III, Attorney General and Reporter; Jeffrey D. Zentner, Assistant Attorney General; Jimmy B. Dunn, District Attorney General; and William Brownlow Marsh and Charles L. Murphy, Assistant District Attorneys General, for the appellee, State of Tennessee.

**OPINION**

## FACTUAL AND PROCEDURAL HISTORY

The procedural history of this case is somewhat convoluted, and we rely on the record on appeal and on two prior appeals before this court in summarizing the facts related to the issues before us. *See State v. Charles Edward Mason, Jr.*, No. E2017-01050-CCA-R3-CD (Tenn. Crim. App. Dec. 14, 2017) (order granting motion for voluntary dismissal of probation revocation appeal); *State v. Charles Edward Mason, Jr.*, No. E2015-01936-CCA-R8-CO (Tenn. Crim. App. Jan. 6, 2016) (order affirming denial of bond); *see also State v. Lawson*, 291 S.W.3d 864, 869 (Tenn. 2009) (a court may take judicial notice of an earlier proceeding in the same case); Tenn. R. Evid. 201(b), (c).

On June 29, 2015, the Defendant was indicted in case number 6500 for three counts of attempted first degree murder, three counts of aggravated assault, and one count of reckless endangerment committed against three victims on or about March 22, 2015. The factual basis for these charges was that the three victims drove a vehicle onto the Defendant's property and the Defendant fired shots, wounding two of the victims. The Defendant was released on bond.

On September 9, 2015, the Defendant was arrested for new offenses arising out of the Defendant's belief that Mr. Pat Proffitt or his son, Mr. Jessie Proffitt, had injured the Defendant's dog by pouring bleach or gasoline in the dog's ears. The Defendant began a campaign of telephone harassment against sixty-six-year-old Mr. Pat Proffitt, repeatedly threatening to kill him, his wife, and other members of his family. Mr. Pat Proffitt's son Mr. Benjamin Proffitt attempted to intervene and agreed to meet the Defendant at the Defendant's home to end the conflict with a physical fight. When Mr. Benjamin Proffitt arrived at the end of the driveway, the Defendant fired a gun at him from approximately 130 yards away. The Defendant was ultimately charged with aggravated assault against Mr. Benjamin Proffitt in case number 6893 and with harassment and aggravated stalking of Mr. Pat Proffitt in case number 6894. While in custody awaiting further proceedings, the Defendant was beaten by fellow inmates and suffered severe injuries, including subdural hematoma. *See State v. Charles Edward Mason, Jr.*, No. E2015-01936-CCA-R8-CO (order).

At a hearing to revoke the Defendant's bond held on September 24, 2015, the State presented testimony that the Defendant was attempting to purchase weapons while making threats against the lives of individuals at the prosecutor's office, and the State introduced an audio recording of the Defendant threatening the victim-witness coordinator, the District Attorney General, and the Assistant District Attorney General over the telephone. *See id.*

- 2 -

The Defendant entered guilty pleas on February 26, 2016, to three counts of aggravated assault in case number 6500, one count of aggravated assault in case number 6893, and one count of aggravated stalking in case number 6894. The remaining counts charging attempted first degree murder, reckless endangerment, and harassment were dismissed. The Defendant agreed to plead guilty as a Range II offender, with an agreed sentence of ten years for each aggravated assault conviction and two years for the aggravated stalking conviction. The sentences stemming from the three aggravated assaults in case 6500 were to run concurrently with one another, and the sentences stemming from the offenses committed while on bond were to run concurrently with one another, for an effective sentence of twenty years, with credit for time served and the remainder to be served on supervised probation.

On November 7, 2016, a warrant was issued against the Defendant for violation of his probation after a search conducted at his residence revealed ammunition, an improperly charged ankle monitor, an absent transdermal patch, and drugs, including methamphetamine. On April 21, 2017, the trial court revoked the Defendant's probation and ordered him to serve his sentence in confinement. This order was the subject of an appeal which was subsequently voluntarily dismissed.

According to defense counsel's argument at the 2018 revocation hearing, the Defendant subsequently sought relief in the trial court based on the allegation that the evidence used to support the revocation should have been suppressed. On January 18, 2018, the trial court entered an order granting a writ of error coram nobis and ordering the Defendant's immediate release to supervised probation. The order provided that it would "replace[] any previous Orders regarding [the Defendant's] conditions of probation as well as previous judgments regarding a Violation of Probation warrant issued and executed on November 7, 2016." The terms of the probation included restrictions on the Defendant's travel and on his use of any narcotics or opiates without court approval.

On February 26, 2018, a warrant and a probation violation report were issued, alleging that the Defendant had failed to report as instructed to his probation officer and had failed to submit to drug screening. On March 26, 2018, a second warrant, accompanied by a second report, was issued, alleging that when the Defendant was apprehended on March 13, 2018, he tested positive for amphetamine, methamphetamine, buprenorphine, benzodiazepine, morphine, and cocaine. Both probation violation reports noted that the Defendant's probation officer asked him to report to complete a missing risk and needs assessment and that the Defendant did not provide a urine sample when he reported to complete the assessment.

The Defendant moved to be released on bond and permitted to enter into an inpatient drug treatment facility located out of the state. The trial court held a bond hearing, and the parties subsequently agreed that testimony from the bond hearing could be considered for the purposes of the revocation hearing.

Mr. Daniel Kerr, the Defendant's probation officer, testified regarding the violations and the Defendant's request to receive drug treatment in another state. Mr. Kerr stated that the Defendant missed a scheduled appointment because he was hospitalized with kidney stones. When the Defendant reported on February 15, 2018, Mr. Kerr asked him to provide a urine sample. The Defendant was unable to provide a sample over the course of three hours. He requested a hair test or catheterization, but Mr. Kerr's supervisor told him that those options were not available and that the Defendant should be instructed to return the following day. The Defendant did not report the following day, and repeated attempts to contact him were unsuccessful. The Defendant eventually returned Mr. Kerr's calls on the Sunday before Mr. Kerr swore out the warrant. The Defendant told Mr. Kerr that he felt that he should not be on probation, that he did not believe he was guilty, that his attorney would overturn his convictions, and that he did not plan to report in the future. After his arrest, he tested positive for numerous drugs.

Mr. Kerr stated that he would agree to have the Defendant placed in inpatient rehabilitative treatment only if he were transported directly from the jail to the treatment facility because the Defendant did not appear to acknowledge that he had to obey the rules of probation. Mr. Kerr testified that if the Defendant were at an inpatient facility in another State for ninety days, his probation supervision would have to be transferred. Any transfer would depend on discretionary acceptance by the receiving State and could not take place while the Defendant had a pending violation.

Mr. Coley Willis, a treatment consultant with American Addiction Centers, stated that he had interviewed the Defendant and that the Defendant had been accepted at a facility in Florida, where he would receive multiple kinds of therapy aimed at rehabilitation. Mr. Willis was able to arrange for transportation to the facility and could also provide the Defendant's probation officer with weekly or daily reports, provide drug screenings, and meet other probation requirements. Mr. Willis acknowledged that if the Defendant wished to leave the Florida facility, he would be able to do so at will.

The Defendant testified that he had been housed in prison in a privately run Hardeman County facility where drugs were very readily available and that he was "more addicted to drugs when [he came] out of prison than [he had] ever been in [his] entire life." He acknowledged that he had refused to report and stated he would not have been able to pass a drug test at the time. He acknowledged his addiction and stated that he

- 4 -

wished to try Vivitrol treatment, which had a high rate of success. He added that he had been admitted to a treatment program in Knoxville if the court did not wish to send him to Florida. He had attempted thirty-day rehabilitation on four prior occasions.

Regarding the circumstances of the offenses, the Defendant stated that the offenses against the Proffitts stemmed from the poisoning of his dog and that the three aggravated assaults took place after he was threatened with a knife and consequently shot into the car. Regarding the shooting, he said, "I was very [—] should I say [—] nice in doing so by shooting where I did." He also noted that he believed his pleas were the result of prosecutorial misconduct. He stated that all of his criminal history was related to his addiction.

The trial court denied bond, noting that the Defendant's revocation hearing was nineteen days away and that the Defendant might pose a danger to the community based on the nature of his past crimes.

At the revocation hearing, the Defendant agreed to stipulate that he was in violation of his probation as alleged in the warrants dated February 26 and March 26, 2018. The parties agreed that the warrant gave notice that the Defendant had violated his three ten-year, concurrent probationary sentences in case number 6500 and the two-year, consecutive probationary sentence in case number 6894.

The State called Mr. Pat Proffitt, who testified that he had known the Defendant all the Defendant's life and that the Defendant had called him numerous times, threatening his life and threatening to cut his wife's throat. He stated that he was terrorized because he knew the Defendant had previously shot two people and had tried to buy automatic weapons. He acknowledged that it was possible that on a prior occasion, he had not testified that the Defendant threatened to cut his wife's throat.

The Defendant gave an allocution at the revocation hearing. He reiterated that the prison in which he was housed was infested with drugs. He noted grievances including an illegal search, a violation of attorney-client privilege, and strict probation conditions including no opioid medication without a court order. The Defendant stated that he had experienced kidney stones while in custody but had not received appropriate treatment, being transferred to Riverbend Maximum Security Institution and segregated instead of being housed in a medical facility. He also stated that Mr. Kerr had previously testified incorrectly. The Defendant stated that he was remorseful for his offenses and would follow the terms of any probationary sentence. He testified that he had experienced a religious awakening and wanted a chance to recover from addiction.

- 5 -

The trial court ordered the Defendant to serve the twelve-year sentence, consisting of the three concurrent ten-year sentences for aggravated assault in case number 6500 and the consecutive two-year sentence in case number 6894, in confinement. The court found that the aggravated assaults were crimes of violence and that the aggravated stalking involved intimidation. It noted that the Defendant had been granted an alternative sentence but had violated his probation. While the trial court commended the Defendant's spiritual awakening, it expressed concern regarding the Defendant's continued animosity toward those involved in his offenses and toward the prosecution. The trial court observed for the record that the Defendant was entitled to and should have received medical treatment while in prison. The court found that the Defendant had violated the conditions of his release after having had a chance at probation, and it ordered him to serve the aggregate twelve-year sentence in prison. The Defendant appeals.

## ANALYSIS

### I. Revocation of Probation

The Defendant contends that the trial court erred in revoking his probation and sentencing him to confinement. In particular, the Defendant argues that because the violations were technical violations, the trial court abused its discretion in not considering an alternative sentence, and he contends that the trial court erred in not procuring a risk and needs assessment. The State responds that the Defendant is not entitled to relief, as both the decision to order confinement and the decision to obtain a risk and needs assessment are discretionary. We agree that the trial court did not abuse its discretion.

When a trial court finds by a preponderance of the evidence that the defendant has violated the conditions of probation, the trial court may revoke the probation. T.C.A. § 40-35-311(e)(1). The decision to revoke probation lies within the trial court's discretion. *State v. Walker*, 307 S.W.3d 260, 263 (Tenn. Crim. App. 2009). To show an abuse of discretion, the defendant must establish that "'the record contains no substantial evidence to support the conclusion of the trial judge that a violation of the conditions of probation has occurred.'" *Id.* at 263-64 (quoting *State v. Wall*, 909 S.W.2d 8, 10 (Tenn. Crim. App. 1994)). The trial court's factual findings and credibility determinations made in a revocation hearing carry the weight of a jury verdict. *State v. Beard*, 189 S.W.3d 730, 735 (Tenn. Crim. App. 2005).

When the trial court has found a violation of probation, it can: "'(1) order incarceration; (2) cause execution of the judgment as it was originally entered; or (3) extend the remaining probationary period for a period not to exceed two years.'" *Id.* (quoting *State v. Hunter*, 1 S.W.3d 643, 648 (Tenn. 1999)); *see* T.C.A. §§ 40-35-310,

-311, -308. The trial court may impose a community-based alternative sentence "provided, that the violation of probation and suspension is a technical one and does not involve the commission of a new offense." T.C.A. § 40-35-311(e)(1)(B). "The determination of the proper consequence of the probation violation embodies a separate exercise of discretion." *State v. Patsy Lynn McCoy*, No. M2011-00006-CCA-R3-CD, 2011 WL 6916227, at *3 (Tenn. Crim. App. Dec. 28, 2011) (citing *Hunter*, 1 S.W.3d at 647); *State v. Reams*, 265 S.W.3d 423, 430 (Tenn. Crim. App. 2007)).

We note initially that the Defendant stipulated that he had violated the conditions of his probation. Accordingly, the trial court did not err by finding by a preponderance of the evidence that a violation had occurred. *See State v. Johnson*, 15 S.W.3d 515, 518 (Tenn. Crim. App. 1999) (the defendant's concession that he had violated the terms of his probation supported the court's conclusion that he had violated probation), *holding modified by State v. Brys Andrew Hensley*, No. E2012-00812-CCA-R3-CD, 2013 WL 793579, at *4 (Tenn. Crim. App. Mar. 4, 2013). The Defendant contends that the trial court failed to consider a community-based alternative sentence.[1] He cites to Tennessee Code Annotated section 40-35-310, which states,

> (b) In addition to the power to restore the original judgment when suspension of sentence is revoked, the trial judge may also resentence the defendant for the remainder of the unexpired term to any community-based alternative to incarceration authorized by chapter 36 of this title; provided, that the violation of the defendant's suspension of sentence is a technical one and does not involve the commission of a new offense.

T.C.A. § 40-35-310(b); *see also* T.C.A. § 40-35-311(e)(1)(B).

This court has held repeatedly that "an accused, already on probation, is not entitled to a second grant of probation or another form of alternative sentencing." *State v. Jeffrey A. Warfield*, No. 01C01-9711-CCA-00504, 1999 WL 61065, at *2 (Tenn. Crim. App. Feb. 10, 1999). Moreover, there is no requirement that the trial court consider other sentencing options when revoking a defendant's probation. *State v. Joshua Daniel Brookshire*, No. E2011-01658-CCA-R3-CD, 2012 WL 627165, at *3-4 (Tenn. Crim. App. Feb. 28, 2012); *State v. George Vincent Ware*, No. E2010-00141-CCA-R3-CD,

---

[1] The parties dispute whether the violation was a technical violation or constituted a new offense. *See* T.C.A. § 40-35-310(b), -311(e)(1)(B) (noting that a community-based alternative sentence is permissible upon a finding of a technical violation of probation). The warrants here alleged only violations of the probationary terms and did not allege that the Defendant had committed any new offense, but we conclude that determination of the issue is not necessary for review because the trial court did not in any event abuse its discretion in ordering confinement.

2010 WL 3448057, at *3 (Tenn. Crim. App. Sept. 1, 2010). The Defendant requested the trial court to reinstate his probation, and the trial court considered renewing the Defendant's probation but, in its discretion, opted to order him to serve the sentence in confinement instead. Accordingly, the Defendant is not entitled to relief on this ground.

The Defendant also asserts that the trial court erred in not requesting a validated risk and needs assessment prior to ordering him to serve his sentence in confinement. Tennessee Code Annotated section 40-35-311 addresses the use of a validated risk and needs assessment by a trial court faced with a decision regarding probation revocation:

> (f) The court *may* consider the results of an offender's validated risk and needs assessment in determining the appropriate disposition of the probation violation charge and *may* request an updated validated risk and needs assessment be performed.

T.C.A. § 40-35-311(f) (emphasis added). Accordingly, the decision to consider the validated risk and needs assessment, as well as the decision to request an updated assessment, is discretionary. We note that, at the revocation hearing, the Defendant never requested the trial court to order an assessment to be completed or to rely on such an assessment and that this claim is accordingly waived. *See* Tenn. R. App. P. 36(a). We conclude that the trial court did not abuse its discretion in revoking the Defendant's probation.

## II. Graduated Sanctions

The Defendant also argues that the trial court erred in January 2018 when it reinstated his probation without making the probationary terms subject to the graduated sanctions outlined in Tennessee Code Annotated section 40-28-301 to -306. He asserts that, had he been subject to the graduated sanctions, his probation would not have been subject to revocation by the trial court according to a sanctions matrix. In his brief, the Defendant argues that the failure to include the graduated sanctions in the terms of his reinstated probation constituted an abuse of discretion. The State responds that he has waived consideration of this issue and that the correct matrix would in any event have required judicial determination of whether the Defendant's probation should be revoked. We conclude that any challenge to the terms of probation was waived by failure to raise it in the trial court.

The Defendant was initially placed onto probation on February 26, 2016. He was subsequently found to have violated the conditions of his probation, but the revocation was set aside due to a successful error coram nobis petition. On January 17, 2018, the trial court entered an order which, by its terms, "replace[d] any previous [o]rders

regarding [the Defendant's] conditions of probation as well as previous judgments regarding a Violation of Probation warrant issued and executed on November 7, 2016." The order was accompanied by a "Probation Order" which was signed by the Defendant and which contained standard preprinted terms of probation as well as additional restrictions on the Defendant's movements and consumption of medication. The "Probation Order," which appears in a supplement to the record, does not contain any language regarding graduated sanctions. Shortly after his reinstatement, the Defendant violated the terms of his probation. During the revocation hearing, the Defendant never advanced the position that his reinstatement to probation was flawed due to the absence of graduated sanctions. The Defendant's probation was revoked on June 18, 2018, and he filed a notice of appeal on July 18, 2018. On appeal, the Defendant challenged the terms of the January 17, 2018 order vacating the prior revocation and reinstating his probation for failure to include graduated sanctions.

We initially address our jurisdiction over this question. Tennessee Rule of Appellate Procedure 3(b) allows for an appeal as of right from an order revoking probation. We have addressed the arguments regarding revocation above. However, the issue raised here does not relate to the trial court's revocation of the Defendant's probation; instead, it is a challenge to the terms of his reinstatement to probation which became effective January 17, 2018. A defendant in a criminal case may appeal the manner of service of his sentence. T.C.A. § 40-35-401(a). A defendant's challenge to the sentence imposed may be based on the contention that it is inconsistent with the purposes of sentencing set out in Tennessee Code Annotated sections 40-35-102 and -103. T.C.A. § 40-35-401(b)(3). We conclude that the statutory provision permitting appeal from the manner of service of a sentence conveys jurisdiction over the trial court's allegedly erroneous failure to include the graduated sanctions in the order.

The State asserts that the Defendant has waived any claim regarding the absence of graduated sanctions. The record demonstrates that the Defendant never once asserted during any of the revocation proceedings that it was error for the trial court to address his probation violation because he should have had the violation reviewed under the graduated sanctions prescribed by the PSA. The Defendant instead attempted to convince the trial court that he would be able to abide by any future probationary terms and requested to be placed back onto probation. The failure to raise this issue in the trial court amounts to waiver. *See State v. Johnson*, 970 S.W.2d 500, 508 (Tenn. Crim. App. 1996) ("Issues raised for the first time on appeal are considered waived.").

We also note that the statute on which the Defendant relies did not take effect until January 1, 2017, after the offenses were committed and after the Defendant was sentenced in this case. *See* 2016 Pub. Acts, ch. 906, § 17. "[T]he sentencing law in effect at the time of the offenses [is] the proper framework for establishing the

defendant's sentences." *State v. Saint*, 284 S.W.3d 340, 347 (Tenn. Crim. App. 2008). The record does not reflect that the Defendant ever requested the trial court to consider the new statute in reinstating his probation.[2] *See State v. Ronnie Brewer*, No. M2016-01651-CCA-R3-CD, 2017 WL 2472373, at *9 (Tenn. Crim. App. June 8, 2017) (concluding that the defendant's claim that he should have been sentenced under the sentencing laws in effect during the time of his sentencing hearing rather than those in effect at the time of the offense was waived when it was raised for the first time on appeal); *State v. Phillip David Howell*, No. 02C01-9901-CC-00018, 1999 WL 1095673, at *1 (Tenn. Crim. App. Oct. 31, 1999) ("Since the record in this case does not contain a transcript of the guilty plea, we must assume that the state is correct in its argument that defendant agreed to the challenged condition of probation.").

We note, moreover, that the Tennessee Supreme Court in *State v. A.B. Price, Jr.* concluded that both this court and the trial court had erred in interpreting section -304 as "forcing a transfer of power from the judiciary to the executive branch, at the direction of the legislature, effective as of the time the notification provision is incorporated into a judgment order." 2019 WL 3282628, at *6. Instead, in reference to the requirement that "the judge of the court having jurisdiction over the case shall determine the conditions of community supervision, which shall include as a condition" the possible imposition of graduated sanctions, T.C.A. § 40-28-304, the Tennessee Supreme Court described this provision, without further elucidation, as "notification provision." *Id.* Accordingly, the Tennessee Supreme Court's interpretation of the provision would appear to be at odds with the Defendant's assertion that the trial court was required to transfer power from the judiciary to the executive branch, effective at the time of sentencing.

We conclude that the issue has been waived by failure to raise it in the trial court, and the Defendant is not entitled to relief.

---

[2] The Tennessee Supreme Court's recent decision in *State v. A.B. Price, Jr., and Victor Sims* asserts that a defendant's failure to challenge the inclusion of the graduated sanctions provision does not amount to waiver in a case in which the defendant wishes to challenge the authority of a person not a member of the judiciary to adjudicate a violation because such a challenge would not become ripe until the violation was adjudicated. No. W2017-00677-SC-R11-CD, 2019 WL 3282628, at *6, n.6 (Tenn. July 22, 2019). In this case, the Defendant does not challenge the authority of the entity adjudicating the revocation, but only the applicability of a statutory provision which did not become effective until after his offenses and initial sentencing. We conclude that any claim the Defendant raises about the applicability of the statutory provision is subject to waiver.

**CONCLUSION**

Based on the foregoing reasoning, we affirm the judgment of the trial court.

_____
JOHN EVERETT WILLIAMS, PRESIDING JUDGE