IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs July 27, 2021

## STATE OF TENNESSEE v. LAJUAN HARBISON

**Appeal from the Criminal Court for Knox County**
**No. 101406D    Steven W. Sword, Judge**

—————————

### No. E2020-01403-CCA-R3-CD

—————————

The Defendant, Lajuan Harbison, remains convicted of three counts each of attempted voluntary manslaughter and of employing a firearm during the commission of a dangerous felony. Following remand for a resentencing hearing, the trial court imposed an effective sentence of eighteen years' incarceration. On appeal, the Defendant argues that his overall sentence was not reasonably related to the severity of the offenses and that the trial court failed to properly account for his rehabiliative efforts while incarcereated prior to resentencing. Following our review, we affirm the trial court's sentencing decision.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS, P.J., and ROBERT W. WEDEMEYER, J., joined.

Gerald L. Gulley (on appeal), and Keith L. Lieberman (at resentencing), Knoxville, Tennessee, for the appellant, Lajuan Harbison.

Herbert H. Slatery III, Attorney General and Reporter; Ruth Anne Thompson, Senior Assistant Attorney General; Charme P. Allen, District Attorney General; and Ta Kisha M. Fitzgerald, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**
FACTUAL BACKGROUND

On April 9, 2013, the Knox County Grand Jury issued a presentment against the Defendant charging him with four counts each of attempted first-degree murder and of

employing a firearm during the commission of a dangerous felony.[1]  These charges arose out of a shooting on September 7, 2012, near Austin-East High School in Knoxville. Following a jury trial, the Defendant was convicted of four counts each of attempted voluntary manslaughter and of employing a firearm during the commission of a dangerous felony.  See generally State v. Lajuan Harbison, No. E2015-00700-CCA-R3-CD, 2016 WL 4414723 (Tenn. Crim. App. Aug. 18, 2016), rev'd, 539 S.W.3d 149 (Tenn. 2018).  A detailed recitation of the facts underlying these offenses can be found in this court's opinion on direct appeal.  See id.

At the March 14, 2014 sentencing hearing,[2] the State argued that several enhancement factors from Tennessee Code Annotated section 40-35-114 applied:  (1) the Defendant had a previous history of criminal convictions or behavior in addition to that necessary to establish the sentencing range due to his carrying a gun without a permit for at least a month prior to the shooting; (2) the Defendant was a leader in the commission of an offense involving two or more criminal actors because he was the driver and chose to stop the car and engage in the shoot-out; (8) the Defendant failed to comply with conditions of a sentence involving release into the community given that his juvenile probation had previously been revoked; and (10) the Defendant had no hesitation about committing a crime when the risk to human life was high based upon the circumstances of the offenses. The State also requested consecutive sentencing pursuant to the dangerous offender criterion of Tennessee Code Annotated Section 40-35-115(b)(4)—"The defendant is a dangerous offender whose behavior indicates little or no regard for human life and no hesitation about committing a crime in which the risk to human life is high."

The Defendant argued that several mitigating factors from Tennessee Code Annotated section 40-35-113 applied: (2) the Defendant acted under strong provocation believing that co-defendant Brown was robbing a group of students and due to a prior shooting by the co-defendants at the Defendant's mother's house; (3) substantial grounds existed that tended to excuse or justify the Defendant's criminal conduct for the same reasons; (6) the Defendant lacked substantial judgment due to his youth (eighteen years of age) and the fact that the Defendant's father died when he was young; and (13) the catch-all mitigating factor, noting that the Defendant accepted responsibility for his actions and was willing to undergo mental health evaluation.  The Defendant also submitted that the

---

[1] The presentment also levied multiples charges against Arterious North, Laquinton Brown, and Carlos Campbell.  Counts 11 through 18 concerned the Defendant.

[2] Though the documents from the original sentencing hearing were not made a part of the record at the resentencing hearing, this court make take judicial notice of its own records.  See State v. Lawson, 291 S.W.3d 864, 869 (Tenn. 2009).

dangerous offender criterion for consecutive sentencing was inherent in the charged conduct and that concurrent, not consecutive, sentencing was merited.

The trial court began by finding that the Defendant was a Range I, standard offender, which carried a range of two to four years for the attempted voluntary manslaughter convictions, see Tennessee Code Annotated section 40-35-112(a)(4), and noting that a mandatory minimum sentence of six years for the convictions of employing a firearm in the commission of a dangerous felony was required, see Tennessee Code Annotated section 39-17-1324(h)(1). The trial court then considered the enhancement and mitigation factors urged by the parties.

Relative to the enhancement factors, the trial court determined that the Defendant's criminal history was entitled to some weight given his juvenile record and his carrying a weapon without a permit. The trial court also stated that the Defendant was a leader in the commission of the offenses because he drove the car but that this factor was not entitled to a lot of weight. The trial court likewise did not give "all that much weight" to the Defendant's prior revocation of juvenile probation in 2001. However, the trial court did "put a lot of weight behind" enhancement factor (10), reasoning,

> There were a lot of people around . . . , and [the Defendant's] own testimony . . . was that he shot up in the air to try to scare these people off. So the . . . first round being fired would have come from him, and the risk to the human life there was just unbelievably high, and all the rounds that were discharged and sprayed all over that place made this an incredibly dangerous situation. It's just . . . a war in front of a high school.

As for mitigation, the trial court found that the Defendant was entitled to some mitigation because he accepted a certain level of responsibility, though the trial court did not believe that the Defendant was completely truthful in that regard.

According to the trial court, the "jury took into account all that mitigation" by finding the Defendant guilty of the lesser-included offenses. The trial court then stated that "the shooting in front of a school with multiple people, multiple guns, multiple rounds" greatly outweighed all other mitigation and determined that the only appropriate sentence was the maximum sentence of four years for each of the attempted voluntary manslaughter convictions (counts 11-14).

In regards to whether the sentences would be served consecutively or concurrently, the trial court found that the Defendant was a dangerous offender whose behavior indicated little or no regard for human life and no hesitation about committing a crime in which the risk to human life was high. The trial court found that the Defendant "was willing to engage in highly risky behavior that present[ed] a crime that [was] highly risky to the li[ves] of

others without hesitation." The trial court added that consecutive sentencing was "justly deserved in relation to the seriousness of the offense" and discussed the circumstances surrounding the Defendant's crimes—that the shoot-out occurred in front of a school where numerous other persons were present and that the Defendant was the first to fire his weapon. The trial court also remarked that it was "necessary to protect our community from somebody who would engage in this type of behavior" and concluded that some consecutive sentencing was justified.

The trial court ordered each the Defendant's four-year sentences for attempted voluntary manslaughter to run consecutively to one another. The trial court then ordered that the six-year sentences for each count of employing a firearm during the commission of a dangerous felony (counts 15-18) were to be served consecutively to the underlying attempted voluntary manslaughter counts, i.e., count 15 was ordered to run consecutively to count 11, count 16 consecutively to count 12, and so on. Ultimately, the trial court utilized an alignment of concurrent and consecutive sentencing that yielded a sentence of twenty-two years. Harbison, 2016 WL 4414723, at *30.

On direct appeal, this court overturned the decision of the trial court and remanded the case for a new trial, reasoning that a severance of defendants should have been granted and that the failure to do so constituted reversible error. Harbison, 2016 WL 4414723 at *1. We also concluded that the evidence was insufficient to support one of the Defendant's convictions for attempted voluntary manslaughter because the doctrine of transferred intent was inapplicable to such a conviction and that the corresponding count of employing a firearm during the commission of said dangerous felony likewise could not stand. Id. In addition, we determined that multiple convictions for employing a firearm during the commission of a dangerous felony violated double jeopardy principles because the statute did not authorize separate firearms convictions for each felony committed in a single transaction. Id. The Tennessee Supreme Court reversed this court's decision regarding severance and double jeopardy principles, reinstated the Defendant's three convictions for attempted voluntary manslaughter and three convictions for employing a firearm during the commission of a dangerous felony, and remanded the case to the trial court for resentencing and corrected judgments. Harbison, 539 S.W.3d at 149.

Following the appointment of counsel, a resentencing hearing was held on September 11, 2020. At the outset, defense counsel stated that he intended to rely "to some extent" on the original sentencing memorandum filed before the first sentencing hearing and provided a copy to the trial court and the State. As collective exhibit 1, the defense entered certificates of completion for various programs that the Defendant had taken while in prison and reference letters from members of the community written in support of the Defendant. The certificates reflected the Defendant's completion of courses on leadership skills, completion of a "Karios Inside Weekend Program," and completion of seminars in

behavior modification by Tennessee Prison Outreach Ministry, including anger management. Additionally, the Defendant submitted numerous letters from friends, family, and educators discussing the Defendant's rehabilitation efforts and potential for a future productive life. The presentence report and an addendum to the report were filed as exhibit 2. The addendum to the report noted that the Defendant had received three disciplinary infractions since the completion of the report for defiance on July 6, 2020, and July 28, 2020, and for sexual misconduct on August 7, 2020.

Defense counsel remarked that the individual being sentenced today was not same individual being sentenced back in 2014. Defense counsel noted that since the Defendant's convictions, the Defendant had spent seven years in prison and that he had changed his perspective. Defense counsel submitted that the Defendant committed these offenses because of a prior shooting at the Defendant's mother's house and he felt the need to protect himself and his family following that event. Defense counsel also noted that the Defendant "shot maybe twice" during the Austin-East shooting. According to defense counsel, the Defendant wanted to become an electrician upon his release, and the Defendant had provided potential contact information for a job.

Oracle West, the Defendant's mother, testified that her son had changed "behavior-wise," as well as evolved spiritually. She acknowledged her shortcomings as a young mother and indicated that she believed that the Defendant was ready to be an "example in the community."

Jessica Green, the Defendant's girlfriend, testified that she and the Defendant knew each other as children and that they had grown closer in the recent past through phone conversations. Ms. Green indicated that she had "noticed a lot of change" in the Defendant and that he had "matured a lot." She described the Defendant as very patient, kind, and understanding, as well as his becoming "a lot closer to God" while incarcerated. Ms. Green also said that Defendant had "motivated" her to become a "better woman" and that he was a positive motivator for her son. According to Ms. Green, the Defendant desired to become a football coach after his release and to be an "example to younger children."

Ms. Green admitted that she had visited the Defendant in December 2019 when she placed her hand on his thigh. She acknowledged that the Defendant received a write-up for inappropriate sexual contact because of this incident and that her visitation rights were suspended. She was aware of another write-up against the Defendant for sexual misconduct, on August 7, 2020, but said that it did not involve her on that occasion. She was also aware of a write-up against the Defendant for defiance on July 28, 2020.

The Defendant stated that when he committed the crimes, he was not "really developed as a . . . man," that he lacked maturity, and that he was not thinking of the consequences of his actions, but simply following others. According to the Defendant,

- 5 -

since his incarceration he had done his best to better himself and tried to learn as much as possible. He stated that he was reformed and asked to be judged as the person he was at the time of this sentencing hearing. He expressed his desire for a second chance, so he could spend more time with his family.

The State indicated that it was relying on the enhancement factors filed during the first sentencing hearing. The State then submitted that the Defendant was still unwilling to follow the rules, noting that the Defendant's last write-up in prison was less than a month before the resentencing hearing and that he had a total of twenty-nine infractions while incarcerated. The State further observed that the circumstances of this offense had not changed and that the facts of this case were "awful," given that it was face-off between rival gangs with multiple shots fired outside of a school while children were present.

The trial court first stated that it was adopting the findings "made at the original sentencing hearing." The trial court then addressed the Defendant's arguments in mitigation. Relative to mitigating factors (2) and (6), the trial court relied upon its previous ruling. Relative to mitigating factor 3, the trial court determined that factor (3) was inapplicable because the prior shooting at the Defendant's mother's house occurred earlier in time and the subsequent shooting outside the high school was not some sort of "immediate response, retaliation, or reflex of actions." Relative to mitigating factor (13), the trial court observed that most of the "additional" evidence had been dealt with at the original sentencing hearing.

However, the trial court noted that under factor (13), the Defendant had presented new mitigation information regarding his behavior since his incarceration. The trial court commented that this new information was "kind of a mixed bag," noting that the Defendant had a lot of infractions while incarcerated, which was "obviously concerning," though the Defendant had also likely "grown up a lot" during that time. The trial court commented that while "some of that stuff [was] true," it did not "really mitigate what happened back then," so there was "not a lot different in [its] sentencing calculations."

After determining that the Defendant's mitigation evidence regarding his behavior while incarcerated did not necessitate changing the original sentences imposed, the trial court again sentenced the Defendant to four years on each count of attempted voluntary manslaughter (counts 12-14), all run consecutively to one another. The trial court then imposed six-year sentences on each count of employing a firearm during the commission of a dangerous felony (counts 16-18), which were ordered to be served consecutively to the underlying attempted voluntary manslaughter counts. The trial court also noted that corrected judgment forms would need to be entered for counts 11 and 15 to reflect dismissal. New judgment forms were entered, and this appeal followed.

- 6 -

On appeal, the Defendant argues that the trial court erred in failing to impose a lower effective sentence than that it imposed in 2014 because there was proof that the Defendant was amenable to correction and because an eighteen-year sentence was not reasonably related to the severity of the Defendant's conduct. Specifically, the Defendant states that he offered proof at the resentencing hearing that he was amenable to correction and that his positive rehabilitative efforts while incarcerated should have been considered. The Defendant cites to the favorable evidence that he had offered at the resentencing hearing, such as his completion certificates and the recommendation letters from multiple individuals, as well as observing that "most of his TDOC infractions were from his initial few years in the TDOC," and thus not representative of his evolving character. In addition, the Defendant submits that an eighteen-year sentence is not reasonably related to the severity of his conduct because there was "no physical evidence that he fired more than two shots" and because he suffered a gunshot wound himself during the shooting. The Defendant requests that this court either reduce the sentence within the applicable range for the convictions for attempted voluntary manslaughter, run one or more of those convictions concurrently with one another, or both.

The State responds that the trial court properly exercised its discretion in resentencing the Defendant. Relative to the Defendant's alleged rehabilitative efforts, the State notes that the Defendant had twenty-nine write-ups for his misconduct while in prison, including three that took place between the time of the preparation of the presentence report and the September 11, 2020 hearing. The State further observed that the Defendant underwent a risk and needs assessment on November 11, 2019, and that he received a rating of "high (violent)." Relative to the effective sentence supposedly being unrelated to the severity of the Defendant's conduct, the State remarks that the Defendant's crimes involved rival gang members shooting at one another and the shoot-out occurred in front of a high school just as students were being let out for the day.

Before a trial court imposes a sentence upon a convicted criminal defendant, it must consider: (1) the evidence adduced at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on the enhancement and mitigating factors set forth in Tennessee Code Annotated sections 40-35-113 and 40-35-114; (6) any statistical information provided by the Administrative Office of the Courts as to Tennessee sentencing practices for similar offenses; (7) any statement the defendant wishes to make in the defendant's own behalf about sentencing; and (8) the result of validated risk and needs assessment. Tenn. Code Ann. § 40-35-210(b). When an accused challenges the length and manner of service of a sentence, this court reviews the trial court's sentencing

determination under an abuse of discretion standard accompanied by a presumption of reasonableness. State v. Bise, 380 S.W.3d 682, 707 (Tenn. 2012). This standard of review also applies to consecutive sentencing determinations. State v. Pollard, 432 S.W.3d 851, 860-61 (Tenn. 2013). The burden of showing that a sentence is improper is upon the appealing party. See Tenn. Code Ann. § 40-35-401, Sentencing Comm'n Cmts.; see also State v. Arnett, 49 S.W.3d 250, 257 (Tenn. 2001).

To facilitate meaningful appellate review, the trial court must state on the record the statutory factors it considered and the reasons for the ordered sentence. Tenn. Code Ann. § 40-35-210(e); Bise, 380 S.W.3d at 705-06. "Mere inadequacy in the articulation of the reasons for imposing a particular sentence, however, should not negate the presumption [of reasonableness]." Bise, 380 S.W.3d at 705-06. A trial court's sentence "should be upheld so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." Id. at 709-10. Moreover, under such circumstances, appellate courts may not disturb the sentence even if we had preferred a different result. See State v. Carter, 254 S.W.3d 335, 346 (Tenn. 2008). Those purposes and principles include "the imposition of a sentence justly deserved in relation to the seriousness of the offense," Tennessee Code Annotated section 40-35-102(1), a punishment sufficient "to prevent crime and promote respect for the law," Tennessee Code Annotated section 40-35-102(3), and consideration of a defendant's "potential or lack of potential for . . . rehabilitation," Tennessee Code Annotated section 40-35-103(5). Carter, 254 S.W.3d at 344. Ultimately, in sentencing a defendant, a trial court should impose a sentence that is "no greater than that deserved for the offense committed" and is "the least severe measure necessary to achieve the purposes for which the sentence is imposed." Tenn. Code Ann. § 40-35-103(2), (4).

Relative to sentence length, the weight to be afforded an enhancement or mitigating factor is left to the trial court's discretion so long as its use complies with the purposes and principles of the 1989 Sentencing Act and the court's findings are adequately supported by the record. Tenn. Code Ann. § 40-35-210(d)-(f); Carter, 254 S.W.3d at 342-43. Moreover, no longer does misapplication of an enhancement or mitigating factor "invalidate the sentence imposed unless the trial court wholly departed from the 1989 Act, as amended in 2005." Bise, 380 S.W.3d at 706.

Relative to consecutive sentencing, Tennessee Code Annotated section 40-35-115(b) provides, in pertinent part, that a trial court may order sentences to run consecutively if it finds by a preponderance of the evidence that "[t]he defendant is a dangerous offender whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high[.]" Tenn. Code Ann. § 40-35-115(b)(4). Moreover, when the imposition of consecutive sentences is based on the trial court's finding the defendant to be a dangerous offender, the court must also

find "that the terms imposed are reasonably related to the severity of the offenses committed and are necessary in order to protect the public from further criminal acts by the offender." State v. Wilkerson, 905 S.W.2d 938, 939 (Tenn. 1995); see also Pollard, 432 S.W.3d at 863-64.

The Defendant received an in-range sentence of four years for each of the three attempted voluntary manslaughter counts and, as noted above, a six-year mandatory minimum sentence was required for each of the employing a firearm convictions. Furthermore, consecutive sentencing, as partially imposed, was mandatory in this case. Tennessee Code Annotated section 39-17-1324(e)(1) mandates that a sentence for employing a firearm during the commission of a dangerous felony "be served consecutive to any other sentence the person is serving at the time of the offense or is sentenced to serve for conviction of the underlying dangerous felony." See also Tenn. Code Ann. § 39-17-1324(i)(1)(C), (M) (incorporating attempted voluntary manslaughter as a dangerous felony). Here, given the unique structure of the Defendant's various sentences, each firearm count is aligned consecutive to the corresponding underlying attempted voluntary manslaughter count and then aligned concurrently as much as possible with all the other counts.

Though the Defendant argues that he has benefited from his seven years in prison by taking various rehabilitative steps, which, in his opinion, reflect that he is amenable to corrections, the trial court determined otherwise, finding that the information presented at the resentencing hearing was "kind of a mixed bag," noting the Defendant's multiple infractions while incarcerated. The trial court once again concluded that the circumstances of the offense outweighed the mitigation evidence offered by the Defendant. The presentence report indicates that the Defendant had twenty-nine disciplinary infractions while in prison, including three of which took place between the preparation of the presentence report and the resentencing hearing. Moreover, in the risk and needs assessment, the Defendant received a rating of "high (violent)" for likelihood of re-offense.

On appeal, the Defendant's main contention is not with the trial court's application of any sentencing factors but rather with the trial court's failure to weigh favorably the mitigation evidence he offered about his behavior while incarcerated and to impose overall lesser terms than originally ordered. However, the trial court reviewed the Defendant's behavior during his incarceration and did not find that it merited any lesser terms. The record fully supports the trial court's findings in this regard, and we discern no abuse of discretion from the trial court's conclusion that an eighteen-year sentence was reasonably related to the severity of the Defendant's conduct.

## CONCLUSION

Upon consideration of the foregoing, we affirm the sentencing decision of the trial court.

_____
D. KELLY THOMAS, JR., JUDGE