IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
September 8, 2022 Session

## STATE OF TENNESSEE v. JEREMY LYNN THORNTON

**Appeal from the Circuit Court for Benton County**
**No. 2019-CR-86     Charles C. McGinley, Judge**

_____

**No. W2021-01127-CCA-R3-CD**
_____

The Defendant, Jeremy Lynn Thornton, was convicted in the Benton County Circuit Court of possession of methamphetamine with intent to sell or deliver, possession of heroin with intent to sell or deliver, simple possession of alprazolam, simple possession of marijuana, possession of drug paraphernalia, and simple possession of diazepam and received an effective ten-year sentence to be served as one year in confinement followed by nine years on community corrections. The State appealed the Defendant's community corrections sentence, and this court reversed the decision of the trial court and remanded the case for a new sentencing hearing. On remand, the trial court again imposed an effective ten-year sentence to be served as one year in confinement followed by community corrections. The State appeals, claiming that the Defendant is not eligible for community corrections due to his past pattern of behavior indicating violence and pattern of committing violent offenses. Based upon the oral arguments, the record, and the parties' briefs, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

JOHN W. CAMPBELL, SR., J., delivered the opinion of the court, in which J. ROSS DYER and JILL BARTEE AYERS, JJ., joined.

Herbert H. Slatery III, Attorney General and Reporter; Samantha L. Simpson, Assistant Attorney General; Matthew F. Stowe, District Attorney General; and Michelle Morris-Deloach, Assistant District Attorney General, for the appellant, State of Tennessee.

Kendall Stivers Jones (on appeal), Assistant Public Defender - Appellate Division, Franklin, Tennessee, and Paul D. Hessing (at trial), Camden, Tennessee, for the appellee, Jeremy Lynn Thornton.

# OPINION

## FACTS

In June 2019, the Benton County Grand Jury returned a six-count indictment, charging the Defendant with possession of 1.35 grams of methamphetamine with intent to sell or deliver, a Class B felony; possession of .93 grams of heroin with intent to sell or deliver, a Class B felony; possession of alprazolam, a Class A misdemeanor; possession of 2.6 grams of marijuana, a Class A misdemeanor; possession of drug paraphernalia, a Class A misdemeanor; and possession of diazepam, a Class A misdemeanor. The Defendant went to trial in September 2019, and the jury convicted him as charged in the indictment.[1]

The trial court held a sentencing hearing on November 19, 2019. No witnesses testified at the hearing, but the State introduced the Defendant's presentence report into evidence.[2] According to the report, the then forty-two-year-old Defendant was a high school graduate and attended Jackson State Community College but dropped out before he completed his associate's degree. The Defendant stated in the report that he had been married to his wife for twenty-two years and that they had three children: eighteen-year-old twin sons and an eight-year-old son. The Defendant reported that he had health issues, including high blood pressure and diabetes; that he received outpatient counseling "many years ago" for depression and anxiety; and that he had been taking medications for anxiety and depression during the past three years. The Defendant also reported prior use of marijuana, heroin, methamphetamine, oxycontin, oxycodone, and cocaine and said he had "a problem" with methamphetamine. He stated that he "stayed clean from meth" for seven years but that he last used the drug just nine months prior to the presentence report. The Defendant said he completed thirty days of court-ordered drug treatment at New Life Lodge in 2005 and eight months of court-ordered drug treatment at Hope Ministries Center in 2012. The Defendant said he was self-employed in the construction business.

The report showed the following prior misdemeanor convictions for the Defendant: two 2019 convictions of violating an order of protection, a 2012 conviction of domestic assault, a 2011 conviction of simple assault, a 2010 conviction of theft, a 2010 conviction of marijuana possession, and a 2007 conviction of speeding. In 2012, he violated the

---

[1] The trial transcript is not in the appellate record and was not included in the record for the State's previous appeal of this case. Therefore, we do not know what evidence was presented to the jury.

[2] This court may take judicial notice of its own records. *State v. Lawson*, 291 S.W.3d 864, 869 (Tenn. 2009). Due to the nature of this case, we have taken judicial notice of the record from *State v. Jeremy Lynn Thornton*, W2020-00159-CCA-R3-CD, 2021 WL 142171 (Tenn. Crim. App. Jan. 15, 2021).

probation sentence he was serving for the 2011 assault conviction. The Defendant's Strong-R assessment classified his overall risk to reoffend as moderate and concluded that he had high needs relevant to "Mental Health," "Alcohol/Drug Use," "Aggression," and "Education" and low needs relevant to "Friends," "Attitudes/Behaviors," "Residential," "Family," and "Employment."

The State argued that the trial court should enhance the Defendant's sentences based on his history of criminal convictions or criminal behavior and noted that while he was on bond for the offenses in this case, he twice violated a protective order that had been obtained by his wife. *State v. Jeremy Lynn Thornton*, No. W2020-00159-CCA-R3-CD, 2021 WL 142171, at *1 (Tenn. Crim. App. Jan. 15, 2021). The State also argued that the Defendant should serve his sentences in confinement. *See id.* At the conclusion of the hearing, the trial court sentenced the Defendant to concurrent sentences of ten years for each felony conviction and eleven months, twenty-nine days for each misdemeanor conviction and ordered that he serve the effective ten-year sentence as one year in confinement followed by nine years on community corrections. *Id.* at *2. The State asserted that the Defendant was ineligible for community corrections because his prior convictions of assault, domestic assault, and violating the order of protection established a past pattern of behavior indicating violence. *Id.* at *3. The trial court did not address the prior assault convictions but said the violations of the order of protection were "'collateral'" to his case. *Id.* The trial court affirmed its decision to place the Defendant on community corrections after serving one year in confinement. *Id.*

The State appealed to this court, arguing, in pertinent part, that the Defendant was ineligible for community corrections due to his having "'a present or past pattern of behavior indicating violence' and 'a pattern of committing violent offenses.'" *Id.* (quoting Tenn. Code Ann. § 40-36-106(a)(1)(E)-(F)). A panel of this court reversed the judgment of the trial court and remanded the case for a new sentencing hearing, explaining,

> While great deference is given to the trial court in sentencing matters, the trial court is required to make minimal findings at best. Here, however, our review of the record reveals the trial court simply placed the defendant on community corrections once the State pointed out that the defendant was not eligible for probation. Contrary to the defendant's claim that the trial court found his criminal history did not amount to a pattern of violence, no such finding was made. Rather, the trial court simply stated that two violations of a protective order were "collateral" issues. Again, we note that the trial court made this finding without any proof presented. Additionally, we are perplexed by the trial court's finding that these violations, which occurred while the defendant was released on bond after his conviction in the instant matter, were "collateral" and not relevant to the defendant's

suitability for alternative sentencing, especially one involving release into the community. Not only did the trial court fail to hear any evidence on the nature of the defendant's violations or make a finding as to whether these violations were violent in nature, but it also failed to make any finding relating to the defendant's convictions for assault and domestic violence. Moreover, the trial court failed to make any findings pursuant to Tennessee Code Annotated § 40-36-106 as to how the defendant qualified for community corrections. Based on our review of the record, the trial court abused its discretion by imposing a sentence of community corrections without making any findings concerning the defendant's violations of a protective order, whether he has a history of violence, and his overall suitability for community corrections. Therefore, we reverse the finding of the trial court and remand the matter for a new sentencing hearing consistent with this opinion.

*Id.* at *4.

The trial court held the new sentencing hearing on July 13, 2021. The State did not call any witnesses to testify but introduced into evidence certified judgments from the general sessions court for the Defendant's 2011 conviction of assault and his 2012 conviction of domestic assault. According to the affidavit of complaint attached to the judgment for assault, the Defendant physically assaulted his wife, leaving marks on her forehead and causing her to be in fear of further bodily harm. The judgment showed he was charged with domestic assault but pled guilty to simple assault. According to the affidavit of complaint attached to the judgment for domestic assault, the Defendant intentionally hit his wife on her head several times, pushed her down, broke her cellular telephone, and chased her as she was fleeing their residence. The State also introduced into evidence a copy of a 2012 judgment, showing that due to the Defendant's arrest for domestic assault, he was found to have violated the probation sentence he received for his 2011 assault conviction.

The State then introduced into evidence the order of protection form that was filed by the Defendant's wife on March 6, 2019. On the part of the form that asked for the Defendant's wife to describe the abuse, she wrote:

Physical, verbal, emotional & financial abuse. Respondent is on drugs and has threatened me and our children repeatedly. He has currently changed locks on our house and has refused to let us in and threatens us if we try to get in. He follows & stalks me at work and sends threatening text messages & phone calls.

- 4 -

Finally, the State introduced two certified judgments from the general sessions court, showing that the Defendant pled guilty to violating the order of protection on April 25, 2019, and May 13, 2019.

Elizabeth Winston testified for the Defendant that she worked for community corrections. The Defendant began serving his community corrections sentence on January 11, 2020, and Ms. Winston began supervising him in September 2020. When the Defendant entered the program in January 2020, he was required to report to his community corrections officer twice per week and was drug tested every week. The Defendant complied with those rules for at least ninety days; therefore, the rules were eased so that he had to report one time per week and be drug tested every fourteen to fifteen days. During the Covid-19 pandemic, the Defendant had to report by telephone and was drug tested "as required." The Defendant did not have any violations or positive drug tests while he was in the community corrections program.

Ms. Winston acknowledged that the Defendant was required to be employed. She said she thought he was self-employed in "maintenance," and she described him as "a jack of all trades." The Defendant had a stable residence and lived with his wife and minor son. Ms. Winston acknowledged that the trial court allowed the Defendant to go to Florida on vacation with his family. She said that he "seems happy" and that that he was "very nice." On cross-examination, Ms. Winston acknowledged that because the Defendant was self-employed, she had to rely on his claims about his employment.

At the conclusion of Ms. Winston's testimony, the trial court called a recess so that the Defendant could be drug tested. The Defendant's test was negative for illegal or nonprescribed drugs.

The Defendant testified that he was forty-four years old and that he did not have any felony convictions until 2019. He acknowledged having a problem with substance abuse and said the problem began in his "mid-twenties." He also acknowledged that his prior acts of violence involved his wife and said that the incidents occurred because he was "on drugs." The Defendant and his wife would argue and fight because she wanted him to be sober. In 2012, the Defendant violated probation and went to Hope Center for one year. He stayed sober for three or four years. In 2019, he "started abusing drugs really[] bad." The Defendant's wife and children left home because the Defendant's wife did not want their children to be around the Defendant. The Defendant ended up overdosing on drugs on the side of the road and was "Narcan'd" to save his life. That incident resulted in his convictions in the present case, and he spent one year in jail. He said that he weighed one hundred sixty pounds at the time of his overdose but that he weighed two hundred forty-five pounds at the time of the new sentencing hearing.

The Defendant testified that in April 2019, he violated an order of protection that his wife had obtained. The violation occurred because a neighbor saw the Defendant on the property the Defendant shared with his wife. The Defendant unloaded some materials from his truck, put them into a shed on the property, and left. Although the Defendant did not see or talk to his wife during the incident, he was not supposed to be on the property. In May 2019, the Defendant telephoned the electric company and had the electricity to his marital home turned off. He said he did so because "I didn't want it in my name, cause I wasn't being able to live there." The police arrested the Defendant and informed him that turning off the electricity violated the order of protection. The electricity to the home was never actually turned off, and the Defendant's wife never knew the incident occurred.

The Defendant testified that he went to trial in this case, was convicted, and spent one year in jail. He was released from jail in January 2020 and reconciled with his wife. He had been living with her since his release from confinement. The Defendant said that he was no longer using drugs, that he had not made any threats of violence, and that he was working as a home builder. Two people worked with him, and all three of his sons lived with him and his wife. The Defendant stated,

> I'm much better, much better. I mean I was a disaster, just waiting to happen, you know, and it happened, and I didn't expect -- expect all this to come of it, but it did, and I guess it, you know, it humbled me a little bit, and made me realize, you know, what all I was doing wrong.

He acknowledged that he did not have any anger issues or violent tendencies when he was not using drugs.

On cross-examination, the Defendant testified that he had been using drugs "[o]n and off" for twenty years. His drug use sometimes caused him to be violent toward his wife. The Defendant's children may have been present during some of those incidents, but the Defendant never was violent toward his children. The Defendant stated that he did not remember pleading guilty to assault in 2011 or domestic assault in 2012 and said that "I've never put my hands on my wife." The Defendant said he also did not remember violating his probation sentence for the 2011 assault conviction. The Defendant was convicted of theft and marijuana possession in 2010, went to drug rehabilitation in 2011, and remained sober until 2015.

The Defendant acknowledged that in March 2019, his wife obtained an order of protection against him. According to the order, the Defendant was threatening her, following her to her place of employment, and sending her threatening text messages. He stated, "I don't remember doing all that, but if it was said, I guess it was said." He acknowledged that despite the order of protection, he went onto the property he shared with

his wife. He also telephoned the electric company to have the residential electricity turned off. The electricity was never actually turned off, and the Defendant's wife and children were not living in the residence at the time.

The trial court addressed the sentencing factors listed in Tennessee Code Annotated section 40-35-210(b). The trial court also addressed the Defendant's violations of the order of protection and found that turning off the electricity to the marital residence and being in a shed on the marital property were not acts of violence. The trial court then addressed the Defendant's prior convictions of assault and domestic assault and stated as follows:

> Alright. He's got two Misdemeanor convictions for Simple Assault, which occurred nearly eight (8) years prior to the situation here. Probation and rehab in 2012; No new criminal convictions until 2019, when he began using drugs again.

> The Court finds that two Assault convictions, that occurred almost ten (10) years ago, or eight (8) years before the instant conviction is no indication of violent behavior or convictions at set [sic] time. There is no pattern there that would show the Misdemeanors demonstrate a pattern of violence that would disqualify him.

Accordingly, the trial court found that the Defendant was eligible for community corrections.

The trial court commended the Defendant for staying "clean," noting that he passed his drug test and that he "looks like he's healthy" and "looks like he's drug free." The trial court again sentenced the Defendant to an effective sentence of ten years to be served as one year in confinement followed by nine years on community corrections. The following colloquy then occurred:

> [The State]: And for clarification, Your Honor, if I may, while, Your Honor, referenced not considering the violations of the Order of Protection violent, the Order of Protection itself indicated violence, which was in March of '19. Is, Your Honor considering that in the pattern?

> THE COURT: I considered that, and the Court finds that it's not prima facie evidence of violence.

> [The State]: Thank you, Your Honor.

[Defense counsel]: We're looking for the pattern of violence. Not necessarily the violence.

THE COURT: The pattern of violence, I do not find in this case.

## ANALYSIS

On appeal, the State claims that the trial court abused its discretion by sentencing the Defendant to community corrections because his prior convictions of assault, domestic assault, and violating the order of protection "clearly demonstrate a past pattern of violent behavior and of committing violent offenses, which made [him] statutorily ineligible for community corrections." The State also claims that the trial court ignored the Defendant's previous assault and domestic assault convictions on the basis that they were "somewhat remote." The Defendant argues that the trial court did not abuse its discretion because while his prior convictions of assault and domestic assault may have been violent, the trial court correctly determined that they did not show a pattern of violence. We agree with the Defendant that the trial court did not abuse its discretion.

This court reviews the length, range, and manner of service of a sentence imposed by the trial court under an abuse of discretion standard with a presumption of reasonableness. *State v. Bise*, 380 S.W.3d 682, 708 (Tenn. 2012); *State v. Caudle*, 388 S.W.3d 273, 79 (Tenn. 2012) (applying the standard to alternative sentencing). In determining a defendant's sentence, including the manner of service, the trial court considers the following factors: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on enhancement and mitigating factors; (6) any statistical information provided by the Administrative Office of the Courts as to sentencing practices for similar offenses in Tennessee; (7) any statement by the Defendant in his own behalf; and (8) the result of the validated risk and needs assessment conducted by the department and contained in the presentence report. *See* Tenn. Code Ann. § 40-35-210(b); *see also Bise*, 380 S.W.3d at 697-98. The State may appeal a defendant's community correction's sentence pursuant to Tennessee Code Annotated section 40-35-402. *State v. Jeremy Mulkey*, No. E2012-02337-CCA-R3CD, 2013 WL 5026912, at *2 (Tenn. Crim. App. Sept. 12, 2013). When the State appeals a defendant's sentence, the same standard of review applies, but the burden is on the State to establish that the sentence is improper. Tenn. Code Ann. § 40-35-402, Sentencing Comm'n Cmts.

A defendant is eligible for alternative sentencing if the sentence actually imposed is ten years or less. *See* Tenn. Code Ann. § 40-35-303(a). The Defendant's sentences meet

this requirement. Moreover, a defendant who is an especially mitigated or standard offender convicted of a Class C, D, or E felony should be considered a favorable candidate for alternative sentencing absent evidence to the contrary. *See* Tenn. Code Ann. § 40-35-102(6). Because the Defendant was convicted of two Class B felonies, he is not presumed to be a favorable candidate for alternative sentencing. Tennessee Code Annotated section 40-35-103(1) sets forth the following sentencing considerations, which are utilized in determining the appropriateness of alternative sentencing:

> (A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
>
> (B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or
>
> (C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant.

Moreover, the sentence imposed should be (1) "no greater than that deserved for the offense committed" and (2) "the least severe measure necessary to achieve the purposes for which the sentence is imposed." Tenn. Code Ann. § 40-35-103(2), (4).

The Community Corrections Act of 1985 was enacted to provide an alternative means of punishment for "selected, nonviolent felony offenders in front-end community based alternatives to incarceration." Tenn. Code Ann. § 40-36-103(1). Tennessee Code Annotated section 40-36-106(a)(1) provides that an offender who meets all of the following minimum criteria shall be considered eligible for community corrections:

> (A) Persons who, without this option, would be incarcerated in a correctional institution;
>
> (B) Persons who are convicted of property-related, or drug- or alcohol-related felony offenses or other felony offenses not involving crimes against the person as provided in title 39, chapter 13, parts 1-5;
>
> (C) Persons who are convicted of nonviolent felony offenses;
>
> (D) Persons who are convicted of felony offenses in which the use or possession of a weapon was not involved;

(E) Persons who do not demonstrate a present or past pattern of behavior indicating violence;

(F) Persons who do not demonstrate a pattern of committing violent offenses.

As noted by the State, Black's Law Dictionary defines "pattern" as "[a] mode of behavior or series of acts that are recognizably consistent." *Black's Law Dictionary* (11th Ed. 2019 Westlaw). An offender is not automatically entitled to community corrections upon meeting the minimum requirements for eligibility. *State v. Ball*, 973 S.W.2d 288, 294 (Tenn. Crim. App. 1998).

The State claims that the Defendant was statutorily ineligible for community corrections under Tennessee Code Annotated section 40-36-106(a)(1)(E) and (F). In support of its argument, the State relies on several cases in which this court has determined that a defendant was ineligible for community corrections due to prior convictions. For example, in *State v. Jeffery Russell Utley*, No. 02C01-9812-CC-00385, 1999 WL 685672, at *3 (Tenn. Crim. App. Sept. 3, 1999), this court found that the defendant was ineligible for community corrections because his two prior convictions of assault and aggravated assault indicated a past pattern of violent behavior. In *State v. Demetria J. Kemp*, No. E2007-02603-CCA-R3-CD, 2008 WL 4790607, at *3 (Tenn. Crim. App. Oct. 31, 2008), this court agreed with the trial court that the defendant's two previous convictions of simple assault demonstrated a present or past pattern of behavior indicating violence and demonstrated a pattern of committing violent offenses. Finally, in *State v. Richard W. Shelton*, No. M2017-00240-CCA-R3-CD, 2017 WL 4004257, at *9 (Tenn. Crim. App. Sept. 11, 2017), this court stated that the defendant had a past pattern of behavior indicating violence and that he had demonstrated a pattern of committing violent offenses due to his two assault convictions and six domestic violence convictions.

All of those cases, though, are distinguishable from the instant case. This court's opinions in *Jeffery Russell Utley* and *Demetria J. Kemp* do not indicate how recently or remotely the prior assault and aggravated assault convictions occurred, whereas the prior assault and domestic assault convictions in this case occurred about eight years prior to the new convictions. Additionally, the defendant in *Richard W. Shelton* had two prior assault convictions and six prior domestic assault convictions. We note that he also had violated orders of protection nine times. *See Richard W. Shelton*, 2017 WL 4004257, at *9. The Defendant in this case had one assault conviction and one domestic assault conviction and had violated an order of protection two times, both of which were not violent.

The Defendant argues that his case is more akin to *State v. Artez L. Moreis*, No. W2002-00474-CCA-R3-CD, 2003 WL 1860537 (Tenn. Crim. App. Apr. 2, 2003), and

*State v. David G. White*, No. 01-C-019008CC00189, 1991 WL 8521 (Tenn. Crim. App. Jan. 31, 1991). In *Artez L. Moreis*, 2003 WL 1860537, at *15, this court stated that the defendant's three convictions of simple assault, which occurred seven years prior to the drug offenses at issue, did not "represent a pattern of violence that would make him ineligible for community corrections." In *David G. White*, 1991 WL 8521, at *2, this court found that the defendant's two acts of violence, which occurred "over a period of several years" prior to his arson conviction, did not establish a present or past pattern of behavior indicating violence or a pattern of committing violent offenses.

Here, the record reflects that the trial court considered the principles and purposes of sentencing. Furthermore, in determining whether the Defendant was eligible for community corrections, the trial court considered his prior convictions of assault, domestic assault, and violating the order of protection. The trial court found that the 2011 assault and 2012 domestic assault convictions, both of which occurred eight years prior to the drug offenses at issue, were too remote to establish a past pattern of violence and that the violations of the order of protection were nonviolent. Accordingly, the trial court determined that the Defendant was eligible for community corrections. The trial court commended the Defendant for not using drugs, noting that he tested negative for drugs and appeared to be healthy, and ordered that he serve nine years of his effective ten-year sentence in the community corrections program. Under the circumstances, we cannot say that the trial court abused its discretion by sentencing the Defendant to community corrections.

## CONCLUSION

Based upon the oral arguments, the record, and the parties' briefs, we affirm the sentencing decision of the trial court.

_____
JOHN W. CAMPBELL, SR., JUDGE

- 11 -